Christo P. Napuche v. Commissioner.
Napuche v. Comm'r
Docket No. 62078.
United States Tax Court
T.C. Memo 1959-112; 1959 Tax Ct. Memo LEXIS 136; 18 T.C.M. (CCH) 505; T.C.M. (RIA) 59112; May 28, 1959
*136 Held, respondent properly reconstructed petitioner's net income for the years 1946-1951, inclusive, by the use of the net worth plus nondeductible expenditures method, and the deficiencies determined thereby are sustained. Held, further, a part of the deficiency for each of the years 1946 through 1951 was due to fraud with intent to evade tax; the returns for the years 1946, 1947, and 1950 were false and fraudulent with intent to evade tax; and the assessment and collection of deficiencies for the years 1946, 1947, and 1950 are not barred by the statute of limitations. Held, further, respondent properly determined addition to tax for 1948 under section 291(a). Christo P. Napuche, 12818 E. Jefferson, Detroit, Mich., pro se. Robert J. Fetterman, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: *137 The respondent determined deficiencies in income tax for the years 1946-1951, inclusive, 50 per cent additions to the deficiencies under section 293(b), 1939 Code, and an addition to tax for 1948 under section 291(a) as follows: Year
Deficiencies
Sec. 293(b)
Sec. 291(a)
1946
$7,594.97
$3,259.40
None
1947
8,089.70
4,044.85
None
1948
4,482.79
2,241.40
$976.45
1949
1,101.08
550.54
None
1950
3,703.52
1,851.76
None
1951
82.00
41.00
None
The questions for decision are whether the petitioner understated and failed to report taxable *138 income for each of the years 1946-1951, inclusive, in the amounts determined by the respondent or in other amounts; whether a deficiency, if any, for any of the taxable years is due in whole or in part to fraud with intent to evade tax; and whether petitioner's failure to file a return for 1948 was due to reasonable cause and was not due to wilful neglect. Findings of Fact The petitioner is a resident of Detroit, Michigan. He operates a bar for the sale of beer, wine, and liquor on East Jefferson Street, Detroit. He filed Federal income tax returns for the calendar years 1946, 1947, 1949, and 1950 with the collector of internal revenue for the district of Michigan at Detroit. He did not file returns for the taxable years 1948 and 1951. From 1917 to 1925, the petitioner worked in shoe factories in and around Boston, Massachusetts. In 1925, he went to New York City, where he lived until late 1942 or early 1943, except for a 2-year visit to Albania, the country of his birth, between 1934 and 1936. In New York, he worked as a dishwasher and a short-order counterman in restaurants of the so-called coneyisland type. Around October 1942, petitioner left New York City and went to Detroit. *139 He worked in different restaurants until approximately October 1943, at which time he purchased a bar business in Detroit along with two other persons, Thomas Lavaris and Elias Lavaris. The purchase price of the bar business was $10,000; the petitioner's one-third share was $3,300. In October 1944, the taxpayer purchased the interest of his partners in the business for approximately $11,000. Petitioner has operated his bar business as a sole proprietorship since November 1944. He had six or seven employees. He kept a very simple single entry set of books on the cash basis and employed an accountant to prepare his income tax returns. Petitioner made entries in his book listing the receipts and expenditures for each day. There were no cash register tapes or any other substantiating data kept by the petitioner in regard to his receipts. The receipts reported by the petitioner could not be substantiated. The disbursements listed in the account book were usually substantiated by invoices and cancelled checks. Once a month petitioner's accountant looked at the book which petitioner had prepared and made a profit and loss statement therefrom. At the end of the year, the accountant prepared *140 the petitioner's return on the basis of the figures in the account book. The accountant accepted as correct the figures for receipts entered in the account book. The petitioner's bar business was located on a main throughfare in Detroit. He drew most of his business from employees of the factories of Continental Motors, Hudson Motors, Kaiser-Frazer, and Chrysler Corporation, which were located nearby. The bar is called Bronx Cafe. In the returns of petitioner filed for the years 1944, 1945, 1946, 1947, 1949, and 1950, the petitioner listed income in the amounts and from the sources shown below: 1944
Bronx Cafe - (partnership - 10
months)
$ 6,065.10
Bronx Cafe - (sole proprietor-
ship - 2 months)
1,166.93
Coin Machines
18.80
Total income
$ 7,250.83
1945
Bronx Cafe
$14,263.36
Coin Machines
60.05
Total income
$14,323.41
1946
Bronx Cafe
$11,902.66
Coin Machines
122.70
Total income
$12,025.36
1947
Bronx Cafe
Total income
$ 3,812.05
1949
Bronx Cafe
$ 1,962.75
Apartment Rental
600.00
Total income
$ 2,562.75
1950
Bronx Cafe
$ 691.18
Dividends
1,200.00
Total income
$ 1,891.18
The petitioner did not file returns *141 for 1948 and 1951. However, at the trial of this case, the petitioner's accountant produced copies of income tax forms (Forms 1040) which he stated he had prepared for the petitioner for each of the years 1948 and 1951. Such copies listed income in the amounts and from the sources set forth below: 1948
Bronx Cafe (loss)
[1,798.14)
Apartment Rental
1,975.00
Total income
$ 176.86
1951
Bronx Cafe (loss)
[4,104.53)
Dividends
1,450.00
Loss
[2,654.53)
A revenue agent was assigned to examine the petitioner's 1949 income tax return. Review of the return disclosed that he had invested over $50,000 in his bar business and that the income reported for 1949 and prior years was not sufficient to provide the source of such investment. The receipts of the bar business could not be substantiated by the taxpayer. The examination was broadened to include the years 1946 through 1951. When the agent's preliminary net worth analysis for such years disclosed acquisitions of assets substantially in excess of the amount of income reported by the taxpayer, a special agent was assigned to work with the revenue agent in the examination. A net worth analysis was discussed *142 at several conferences of the revenue agent and special agent with the petitioner and his accountant. The petitioner did not object to any items on the net worth statement except opening cash on hand. He claimed that he had accumulated between $60,000 and $80,000 between the years 1917 and 1925; that he still had that amount of cash on hand at the end of 1945; that he kept the money in a suitcase; and that he had purchased his business and property with such cash. He first stated to the agents that he had taken no money with him when he went to Albania in 1934 and had brought back none when he returned in 1936; later he claimed that he had taken $60,000 with him to Albania and had brought back the same amount. The taxpayer never presented any evidence to the agents that he had a substantial amount of cash on hand at the end of 1945, and he did not produce any witnesses, or the names of any witnesses, to verify his story. The revenue agent and special agent attempted to verify the taxpayer's claim that he had accumulated a substantial amount of cash by the end of 1945. They made an analysis of the petitioner's financial history. The special agent also obtained records showing what *143 income tax returns had been filed by petitioner since 1930. The petitioner told the agents that he had filed one return while he lived in New York City. The records of the collector for Lower Manhattan disclosed that no returns had been filed by the taxpayer in that district for the years 1930 through 1943. The records from the collector's office for Upper Manhattan disclosed that the taxpayer had not filed a return in that district for the years 1930 through 1940, but that the taxpayer had filed a return for 1941 showing an income tax liability of $51.94, and that the taxpayer had filed a return for the year 1942 showing no income tax liability. Records of the Department of Health, Education and Welfare reflect earnings credited to petitioner's Old Age and Survivors Insurance Account, Social Security Number 112-05-XXXX, between January 1, 1937, and September 1943. Such records show that petitioner's total earnings in any one year never averaged more than $1,800, and in many years were substantially less than $1,800. For the first 9 months of 1943, petitioner's earnings were $567.08. Records of the Bureau of Public Debt for the years 1943 through 1952 show that petitioner purchased *144 a bond for the principal amount of $1,000 in February 1944 and a bond in the principal amount of $100 in July 1944, which had a total cost of $825; and that he redeemed both of the bonds in November 1944, which was at about the same time that he purchased the interest of his partners in the bar business. In September 1931, petitioner opened a savings account, number XX6745, at the Franklin Savings Bank in New York City with an initial deposit of $250; he made periodic deposits nearly every month; and there was a balance of $1,687.93 in the account in January 1934, at which time he closed the account and went to Albania. In January 1936, petitioner returned to New York from Albania and at that time he opened another savings account at the Franklin Savings Bank in New York City, account numberXX7514, with an initial deposit of $185. In February 1936, he withdrew $180 from the account, leaving a balance of $5. Thereafter he made periodic deposits and a few withdrawals. There was a balance of $4,826.06 in the account on October 27, 1943, at which time petitioner closed the account. Petitioner did not cooperate with the agents in compiling a net worth statement. The agents obtained *145 each item in the net worth analysis from third-party records, such as court records, county records, records of banks, stockbrokers' records, and from the petitioner's own books and records. The agents made a detailed analysis of the petitioner's net worth increase and nondeductible expenditures for the years 1946 through 1951, which analysis formed the basis of the determination of the deficiencies in this case. The opening figures for assets and liabilities are as of December 31, 1945. The net worth statement of the respondent, exhibit A, is set forth hereinafter. The first item appearing in petitioner's assets in the net worth statement for the year ended December 31, 1945, is cash on hand in the amount of $25,000. That figure was based upon a purchase of stock by the petitioner on January 14, 1946, at a stockbrokerage house in Detroit, Bache and Company, in the total amount of $24,774.07, for which petitioner made payment with a cashier's check in the amount of $25,000. At the time of the examination, the agents were unable to discover the source of the $25,000. The petitioner told them that such money came from his hoard of cash on hand. During conferences with the agents, petitioner *146 was asked specifically whether he had bank accounts other than those appearing in the net worth statement. He denied that he had any other bank accounts, thereby concealing the fact that he had a savings account at the National Bank of Detroit, number XX7212, from which he had withdrawn cash in the amount of $25,000 to purchase the above-mentioned stock. Since the agents did not then know that such bank account existed, they did not list that bank account in the net worth statement. However, they allowed the petitioner a credit of $25,000 for opening cash. The balance in the bank account at the National Bank of Detroit, number XX7212, on December 31, 1945, was $27,739.50. At the trial of this case, the petitioner admitted that his savings from 1917 to the end of 1945 were deposited in this bank account. The net worth statement of petitioner's assets and liabilities is revised and corrected, herewith, by increasing the figure for cash on hand as of December 31, 1945, from $25,000 to $27,739.50. This correction results in an increase of $2,739.50 in the petitioner's assets and opening net worth on December 31, 1945, and a decease in a like amount in petitioner's income for 1946 from *147 $25,561.92 to $22,822.42. After the statutory deficiency notice was issued, the revenue agent learned, in spite of the petitioner's attempt to conceal such asset, of the existence of petitioner's savings account at the main branch of the National Bank of Detroit, number XX7212. The ledger sheets of that account show that there was an initial deposit in the amount of $4,825.81 on October 29, 1943. The deposit ticket shows that such amount was transferred from the petitioner's savings account at the Franklin Savings Bank in New York City. The ledger sheets also show that on November 1, 1943, the petitioner withdrew $3,300, which was at the time that petitioner purchased his one-third interest in the bar business. The records of the account further show that there was another withdrawal in the amount of $7,000 on October 31, 1944, which was at the time that the petitioner purchased the interest of his partners in the bar business for $11,000. There was, at this time, a distribution of $4,000 from the partnership. Account number XX7212 at the main branch of the National Bank of Detroit was closed on October 4, 1946, by transfer to savings account number X9887 at a branch of the National *148 Bank of Detroit, which account is listed in the net worth statement, the balance in the account being $10,213.07 on December 31, 1946. Petitioner had cash on hand at the end of 1946 in the separate amounts of $7,276 and $5,206.47. These amounts of cash on hand appear in respondent's net worth statement. There was a deposit at the National Bank of Detroit in savings account number X9887 on January 2, 1947, in the amount of $7,276. There was a deposit in the amount of $5,206.47 with the Industrial National Bank of Detroit on December 31, 1946. The petitioner, as part of his bar business, cashed pay checks for persons who worked in the area. He maintained a separate check cashing fund. When he had cashed a certain amount of checks, sometimes as much as from $10,000 to $15,000, he took the checks to the bank where he had a commercial account, he deposited such checks, and he withdrew a like amount in cash so that he would have money available with which to cash more checks. He made a small charge, usually the pennies, for cashing a check. For example, if a check for $85.37 was cashed, he charged 7 cents. The deposit on December 31, 1946, of $5,206.47 with the Industrial National Bank, *149 referred to above, reflected such transactions. The bank records show that the petitioner deposited checks totaling such amount and had withdrawn cash in that amount. In 1947, the petitioner transferred his commercial account from the Industrial National Bank of Detroit to the Detroit Bank. In the net worth statement, the amount shown as cash on hand at the end of 1947, $15,509.84, reflects a deposit on December 24, 1947, of checks in such amount and a withdrawal of the same amount of cash, which funds were used by petitioner to cash checks for individuals. Petitioner had cash on hand at the end of 1948 in the amount of $12,739.76; at the end of 1949, in the amount of $9,327.22; at the end of 1950, in the amount of $9,400; and at the end of 1951, in the amount of $7,145.05. These amounts represent deposits of checks in petitioner's commercial account and withdrawals of cash in the same amounts on December 31st, or on a date close to December 31st, of each of the years 1948 through 1951. A certified check dated June 5, 1951, in the amount of $7,500, was obtained by petitioner from the Detroit Bank by withdrawal of that amount from petitioner's commercial account in the Detroit Bank. *150 The check was deposited by petitioner with the United States Fidelity and Guaranty Company pending appeal of a judgment rendered against the petitioner for that amount in a personal injury suit. Such amount was still on deposit at the end of 1951. It was properly treated by the revenue agent as an asset of the petitioner at the end of 1951 as cash in court's custody in the net worth statement. The Petitioner deposited funds in escrow with his attorney, Alexander Perry, in connection with improvements being made on property which petitioner purchased in 1948. At the end of 1949, 1950, and 1951, the balances in the escrow account were $2,978.75, $5,392.79, and $5,392.79, respectively. These amounts represented assets of petitioner and they are shown in the respondent's net worth analysis. The balances in petitioner's bank accounts at the end of the years involved were as follows: Detroit Bank, savings account XX6769, $5,134.61, at the end of 1947; $3,995.69, end of 1948; $4,024.41, end of 1949; $1,038.30, end of 1950; and $470.80, end of 1951. Detroit Bank savings account X1835, $6,000, end of 1950; and $1,630.99, end of 1951. Detroit Bank commercial account, $1,172.12, end of 1947; *151 $100.82, end of 1948; 79 cents, end of 1949; $24.83, end of 1950; and $251.87, end of 1951. National Bank of Detroit savings account XX887, $10,213.07, end of 1946; $4,322.74, end of 1947; $5,641.63, end of 1948; $5,252.13, end of 1949; and $52.13, end of both 1950 and 1951. Industrial National Bank commercial account, $4,414.59, end of 1945; and $974.66, end of 1946. The petitioner, by the end of 1945, had acquired complete ownership of the bar business located on East Jefferson Street in Detroit, and as of December 31, 1945, he had invested $6,907.98 in bar fixtures and $9,787.72 in acquiring the business. He rented the premises at 12810 East Jefferson Street until early in 1948, at which time he purchased property at 12818 East Jefferson Street and moved his business to that building. The purchase price of the property was $40,000; he made a down payment of $15,000, and he executed a land contract, which is similar to a mortgage, for the balance of $25,000. His payments under the land contract were $250 per month. At the end of each of the years 1948 through 1951, the real estate represented an asset in the amount of $20,000, and the building represented an asset in the amount *152 of $20,000. The balance due at the end of each year under the land contract represented a liability. Such balances at the end of the years 1948-1951, were as follows, respectively: $23,721.48, $22,101.70, $20,379.96, and $18,553.07. In 1948, petitioner spent $8,906.26 for an addition to the building, and $2,221.40 for building fixtures. In 1949, he spent an additional $6,441.45 for building improvements (interior alterations), and $495.70 for a television set. In 1950, petitioner spent an additional $14,875.81 for building improvements, including an air conditioning unit, making a total of $30,223.52 expended for building improvements by the end of 1950. Ledger sheets of Bache and Company show stock purchases by petitioner which reflect his ownership of stocks at the end of the years 1946-1951, respectively, as follows: $24,774.37, end of 1946; and $38,558.77, end of 1947, 1948, 1949, 1950, and 1951. In May 1948, the petitioner borrowed $5,600 from Bache and Company and pledged his stock as security for such loan. The balances due on the loan were $5,131.88, end of 1948; $4,630.59, end of 1949; $3,613.78, end of 1950; and $2,301.90, end of 1951. The petitioner received the *153 following amounts of dividends on his stock during the years involved: Year
Amounts of Dividends
1946
$ 675.00
1947
800.00
1948
1,000.00
1949
700.00
1950
1,200.00
1951
1,450.00 The only year in which he reported his dividend income in an income tax return was for 1950. Within 5 years after petitioner's income tax return for the taxable year 1949 was filed, on December 22, 1954, petitioner duly executed and delivered to the respondent under section 275(c) of the Internal Revenue Code of 1939, a consent (Form 872) fixing the period of limitation upon assessment of income tax, whereby it was consented and agreed that the amount of any income tax due under the return filed by petitioner for the taxable year 1949 could be assessed at any time on or before June 30, 1956. The consent was accepted and executed by the respondent on January 4, 1955. The statutory notice of deficiency which constitutes the basis of this proceeding was mailed to petitioner on January 30, 1956. Petitioner's assets, liabilities, net worth, and increase in net worth as of the end of the years 1945-1951, inclusive, were as follows: ASSETS
12/31/45
12/31/46
12/31/47
12/31/48
Cash on Hand
$27,739.50
$ 7,276.00
$15,509.84
$ 12,739.76
Cash on Hand
5,206.47
Detroit Bk. Svgs., 346769
5,134.61
3,995.69
Detroit Bk. Com'l
1,172.12
100.82
Natl. Bk. Det. Svgs., 29887
10,213.07
4,322.74
5,641.63
Ind'l Nat. Bk. Com'l
4,414.59
974.66
Land 12818 E. Jeff'son
20,000.00
Bldg. 12818 E. Jeff'son
20,000.00
Bldg. Improvts.
8,906.26
Bldg. Fixtures
2,221.40
Bar Fixtures
6,907.98
6,907.98
6,907.98
6,907.98
Invest. Business
9,787.72
9,787.72
9,787.72
9,787.72
Bache & Co. Stocks
24,774.37
38,558.77
38,558.77
Mchdse. Inventory
4,711.20
4,637.44
8,212.60
8,411.20
Total Assets
$53,560.99
$69,777.71
$89,606.38
$137,271.23
Less Res. Dep.
778.42
1,464.53
2,150.64
3,948.39
Net Assets
$52,782.57
$68,313.18
$87,455.74
$133,322.84
LIABILITIES
Taxes due
$ 738.13
$ 525.03
$ 751.16
$ 622.40
Land Contract
23,721.48
Loan, Bache & Co.
5,131.88
Total
$ 738.13
$ 525.03
$ 751.16
$ 29,475.76
Net Worth
52,044.44
67,788.15
86,704.58
103,847.08
Less Net Worth Prior Year
52,044.44
67,788.15
86,704.58
Increase Net Worth
$15,743.71
$18,916.43
$ 17,142.50
*154 ASSETS
12/31/49
12/31/50
12/31/51
Cash on Hand
$ 9,327.22
$ 9,400.00
$ 7,145.05
Cash on Hand
Cash, Court's Custody
7,500.00
Cash, Escrow
2,978.75
5,392.79
5,392.79
Detroit Bk. Svgs., 346769
$ 4,024.41
$ 1,038.30
$ 470.80
Detroit Bk. Svgs., 41835
6,000.00
1,630.99
Detroit Bk. Com'l
.79
24.83
251.87
Natl. Bk. Det. Svgs., 29887
5,252.13
52.13
52.13
Land 12818 E. Jeff'son
20,000.00
20,000.00
20,000.00
Bldg. 12818 E. Jeff'son
20,000.00
20,000.00
20,000.00
Bldg. Improvts.
15,347.71
30,223.52
30,223.52
Bldg. Fixtures
2,221.40
2,221.40
2,221.40
Bar Fixtures
6,907.98
6,907.98
6,907.98
Invest. Business
9,787.72
9,787.72
9,787.72
Television
495.70
495.70
495.70
Bache & Co. Stocks
38,558.77
38,558.77
38,558.77
Mchdse. Inventory
7,966.80
7,110.00
6,070.00
Total Assets
$142,869.38
$157,213.14
$156,708.72
Less Res. Dep.
6,087.25
9,240.65
12,393.99
Net Assets
$136,782.13
$147,972.49
$144,314.73
LIABILITIES
Taxes Due
$ 461.29
$ 355.14
$ 350.11
Land Contract
22,101.70
20,379.96
18,553.07
Loan, Bache & Co.
4,630.59
3,613.78
2,301.90
Total
$ 27,193.58
$ 24,348.88
$ 21,205.08
Net Worth
109,588.55
123,623.61
123,109.65
Less Net Worth Prior Year
103,847.08
109,588.55
123,623.61
Increase Net Worth
$ 5,741.77
$ 14,035.06
($ 513.96)
*155 Petitioner realized income in each of the years 1946-1951, inclusive, in the amounts of his annual, net worth increase, plus nondeductible expenditures, which are set forth below. There is set forth below, also, petitioner's total income for each of the taxable years, the amounts of the income reported in income tax returns, and the amounts of unreported, or understated, income: INCOME, REPORTED INCOME, AND UNREPORTED INCOME
1946
1947
1948
Net Worth Income
$15,743.71
$18,916.43
$17,142.50
Living Exp.
1,500.00
1,500.00
1,500.00
Inc. Tax Pd.
5,578.71
2,309.72
(1,219.50)
O. P. A. Fine
1,532.90
Total Income
$22,822.42
$24,259.05
$17,423.00
Reported Income
12,025.36
3,812.05
Unreported Income
$10,797.06
$20,447.00
$17,423.00
1949
1950
1951
Net Worth Income
$ 5,741.47
$14,035.06
($ 513.96)
Living Exp.
1,500.00
1,500.00
1,500.00
Inc. Tax Pd.
964.26
144.25
117.00
O. P. A. Fine
Total Income
$ 8,205.73
$15,679.31
$ 1,103.04
Reported Income
2,562.75
1,891.18
Unreported Income
$ 5,642.98
$13,788.13
$ 1,103.04
The petitioner realized and failed to report taxable income for the taxable years as follows: Year
Income
1946
$10,797.06
1947
20,447.00
1948
17,423.00
1949
5,642.98
1950
13,788.13
1951
1,103.04
*156 Part of the deficiency for each year 1946-1951, inclusive, is due to fraud with intent to evade tax. False and fraudulent returns were filed for the years 1946, 1947, and 1950 with intent to evade tax. Petitioner wilfully and fraudulently failed to file returns and report income for 1948 and 1951. Petitioner's failure to file a return for 1948 was due to wilful neglect. Opinion The respondent has the burden of proving that false or fraudulent returns with intent to evade tax were filed for 1946 and 1947. Sections 276(a) and 1112. Once fraud is established, the statute of limitations does not apply, and petitioner must show that the determination of the deficiency is incorrect, United States v. Bender, 218 Fed. (2d) 869, certiorari denied 349 U.S. 920; Clark v. United States, 211 Fed. (2d) 100, certiorari denied 348 U.S. 911; Harris v. Commissioner, 174 Fed. (2d) 70; Arlette Coat Co., 14 T.C. 751. With respect to the year 1950, his burden of proof includes establishing that petitioner omitted from gross income an amount properly includible therein which amount was in excess of 25 per cent of the amount *157 of the gross income stated in the return, in which event the 5-year period of limitation applies. Section 275(c); Sidney N. LeFiell, 19 T.C. 1162, 1179. No returns were filed for the years 1948 and 1951; therefore, the statute of limitations does not apply. Section 276(a). The execution of a waiver by the parties extended the period of limitation applicable to the year 1949 to June 30, 1956, before which time determinations were made and the statutory deficiency notice was mailed. Section 276(b). The respondent has the burden of proving that all or part of the deficiency for each of the taxable years 1946 through 1951 was due to fraud with intent to evade tax, section 1112, and it is his burden to prove fraud by clear and convincing evidence. Arlette Co., supra. The petitioner has the burden of proving that the respondent's determinations of the amount of his taxable income for 1948, 1949, and 1951 were incorrect. Respondent was justified in reconstructing petitioner's taxable income for the years 1946 through 1951 by use of the increase in net worth plus nondeductible expenditures method. Petitioner did not retain cash register tapes or any other data *158 with which the actual receipts from his business and the entries in his simple accounting records could be checked, verified, and substantiated. The amounts of receipts entered in petitioner's accounting books were computed by himself and there is no evidence that his entries were complete, correct, and accurate. Petitioner's returns for 1947, 1949, and 1950 reported total profits of $6,465.98; and for 1948 and 1951 they reported total losses of $5,902.67. Thus, during the 5-year period 1947 through 1951, petitioner's books showed a total net profit of only $563.31. In contrast to such a poor record of earnings according to petitioner's books and returns, petitioner's expenditures in 1948 (a year of loss in the amount of $1,798.14) were substantial. In 1948, he purchased a building at a purchase price of $40,000 and he spent $8,906.26 for building improvements, and $2,221.40 for fixtures. In 1949, when the reported earnings of his business were only $1,962.75, he spent an additional $6,441.45 for building improvements. In 1950, when the reported earnings of his business were only $691.18, he spent an additional $14,875.81 for building improvements. In these 3 years, petitioner's *159 expenditures for building improvements and fixtures totaled $32,442.92, and he made a down payment of $15,000 on the building he purchased, which increased major expenditures to $47,444.92. For 1945 and 1946, petitioner reported income totaling $26,166.02. Adding to that sum his reported net income for the years 1947-1951, inclusive, of $563.31, his total reported net income for the 7 years 1945-1951 amounted to $26,729.33, which is substantially less than the expenditures of $47,444.92 listed above. Moreover, in 1946 and 1947 petitioner invested $38,558.77 in securities, which brought his major expenditures up to $86,003.69. In other words, whereas petitioner's books and returns showed net income of $26,729.33 for the years 1945-1951, his larger expenditures amounted to $86,003.69. Petitioner does not deny or dispute the detailed items of his assets and liabilities in the respondent's net worth analysis for 1945 through 1951. In the course of the agents' examinations, petitioner claimed that he had accumulated savings as of the end of 1945 of between $60,000 to $80,000 which he had kept in a satchel, which was approximately the total amount of his net worth increases. However, *160 investigation by the respondent's agents established that such explanation and claim of the petitioner was not true. In a thorough and careful investigation of petitioner's bank accounts in New York City and Detroit as far back as 1931, the agents succeeded in tracing forward to 1945 and the succeeding years the opening of accounts in various banks, the transfers of funds, and the increases in bank account balances. Also, the agents located petitioner's savings account, number XX7212, in the National Bank of Detroit, about which petitioner withheld information. At the trial of this case, respondent produced proof about this savings account and showed that on December 31, 1945, the balance in this account was $27,739.50. When confronted with this evidence, petitioner admitted at the trial of this case that from 1917 to the end of 1945 his savings had been deposited in various bank accounts. After respondent presented his extensive proof in the trial of this case, petitioner abandoned his earlier claim that he had had at the end of 1945 substantial, undeposited cash accumulations which accounted for the increases in net worth established by the respondent. Consideration has been *161 given to the amounts of nondeductible expenditures computed by respondent for the taxable years. They are correct, or, where estimated (as in the case of living expenses), the estimates are reasonable. The O.P.A. fine paid in 1947 was a nondeductible expenditure. Henry Watterson Hotel Company, 15 T.C. 902, affd. 194 Fed. (2d) 539; National Brass Works, Inc. v. Commissioner, 182 Fed. (2d) 526, 531. It was properly included in the net worth statement. Upon consideration of the entire record, it is concluded and held that respondent's net worth analysis for the years 1945 through 1951, as corrected to include cash on hand at the end of 1945 of $27,739.50, is correct, and that it properly reflects and conclusively establishes unreported income for each of the years 1946 through 1951 in the amounts set forth in the Findings of Fact. Petitioner did not cooperate with the agents during their investigation. He knew that he had savings account number XX7212 at the National Bank of Detroit at the end of 1945, and that the $24,774 used to purchase stock in 1946 had come from that bank account. The record shows that petitioner entirely omitted dividends *162 from his returns for 1946, 1947, and 1949. He reported dividends in his return for 1950. He failed to report income from rent in 1948. He failed to report income from his check cashing activities, whatever it amounted to, which the record does not show. But petitioner admits that he derived some income from cashing checks for customers. The amounts of unreported income in each of the years involved are of such substantial size that they could not have been unintentionally omitted from petitioner's returns. Petitioner's failure to report dividends and rent could not have been unintentional. Consistent and substantial understatement of income over a period of several years is highly persuasive evidence of fraudulent intent. Rogers v. Commissioner, 111 Fed. (2d) 987; Kurnick v. Commissioner, 232 Fed. (2d) 678; Schwarzkopf v. Commissioner, 246 Fed. (2d) 731; M. Rea Gano, 19 B.T.A. 518; Lillian Kilpatrick, 22 T.C. 446, 458, affd. 227 Fed. (2d) 240; Richard F. Smith, 31 T.C. 1. It is noted, further that petitioner failed to file returns for 1948 and 1951, in which years he received dividends *163 of $1,000 and $1,450, respectively. Petitioner received rental income of $1,975 in 1948, when he failed to file a return. Petitioner has not offered any explanation for his failure to file returns for 1948 and 1951. It is concluded that respondent has established by clear and convincing evidence, Arlette Coat Co., supra, that petitioner wilfully and fraudulently failed to report his correct income for the years 1946, 1947, 1949, and 1950, and that he wilfully and fraudulently failed to report any income for 1948 and 1951. Respondent has established by clear and convincing proof that false and fraudulent returns with intent to evade tax were filed for 1946, 1947, and 1950; that part of the deficiency for each of the years 1946 through 1951 was due to fraud with intent to evade tax; and that for 1950 petitioner omitted from gross income an amount properly includible therein which amount was in excess of 25 per cent of the amount of the gross income stated in the return. No deficiency is barred by the statute of limitations. It is held, further, that petitioner's failure to file a return for 1948 was due to wilful neglect and was not due to reasonable cause. Petitioner, *164 who had the burden of proof under this issue, did not offer any explanation or excuse for his failure to file a return for 1948. Respondent properly determined addition to the tax for 1948 under section 291(a). Although the respondent's determinations are sustained, recomputation under Rule 50 is required because of the correction of one item in the net worth statement relating to an increase in cash on hand at the end of 1945, which reduces the amount of unreported income for 1946 to $10,797.06, as set forth in the Findings of Fact. Decision will be entered under Rule 50.