RICHARD F. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RICHARD F. SMITH AND ALMA M. SMITH, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65292, 65293. Filed October 8, 1958.

*Arthur D. Rich, Esq.*, and *Thomas C. Fitzgerald, Jr., Esq.*, for the petitioners.

*Miller Bowen, Esq.*, for the respondent.

MULRONEY, *Judge:* Respondent determined deficiencies in income tax and additions to tax in these consolidated cases as follows:

| Docket No. | Year | Income tax | Additions to tax under sec. 293 (b)[1] |
|---|---|---|---|
| 65292 | 1943 | $2,226.67 | $1,113.34 |
| | 1944 | 6,438.67 | 3,219.34 |
| | 1945 | 7,308.91 | 3,654.46 |
| | 1948 | 1,285.56 | 642.78 |
| 65293 | 1946 | 3,196.70 | 1,598.35 |
| | 1947 | 1,942.07 | 971.04 |
| | 1949 | 2,285.80 | 1,142.90 |
| | 1953 | 741.10 | None |

In an amended answer in Docket No. 65292 the respondent claimed the following deficiencies and additions to tax:

| Docket No. | Year | Income tax | Additions to tax under sec. 293 (b) |
|---|---|---|---|
| 65292 | 1943 | $589.25 | $294.62 |
| | 1948 | 211.42 | 105.71 |

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

1

The issues are (1) whether petitioners understated their income in the years 1943 through 1949, as computed by the respondent under the net worth plus personal expenditures method; (2) whether the years 1943 through 1949 are barred by the statute of limitations; (3) whether the petitioners are liable for additions to tax under section 293 (b) for the years 1943 through 1949; and (4) whether the petitioners, for the year 1953, are entitled to deduct certain legal fees incurred in a criminal trial in that year against Richard F. Smith, which resulted in his conviction for some of the years involved in the indictment.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are hereby incorporated by this reference.

Richard F. Smith and Alma M. Smith, husband and wife, are residents of Beaufort, South Carolina. Richard filed individual income tax returns for the years 1943, 1944, 1945, and 1948 and Richard and Alma filed joint returns for the years 1946, 1947, 1949, and 1953 with the then collector of internal revenue and/or the district director of internal revenue for the district of South Carolina. For the year 1948 Alma filed an individual income tax return with the then collector of internal revenue for the district of South Carolina. Richard will hereinafter be referred to as the petitioner.

Petitioner has been engaged in the practice of dentistry since approximately 1912, practicing in Clio, South Carolina, from 1912 to 1935 and at Beaufort, South Carolina, from 1935 to the time of the trial. From July 1, 1926, to September 1934 the petitioner was employed as postmaster at Clio at a salary of $1,800 per year. His wife was employed from July 1, 1926, to 1932 as assistant postmaster at a salary of $1,050 per year and after that year she has not been employed. Petitioner's sole source of income from 1935 through 1942 was from the practice of dentistry.

The income tax returns filed by the petitioner and his wife for the years 1943 through 1949 were prepared by Grace White, an attorney, who was never shown any of their books and records. Neither petitioner nor his wife filed income tax returns in any of the years from 1913 through 1939. For the year 1940 the petitioner and his wife filed individual returns in which petitioner paid a tax of $40.87 and Alma paid a tax of $49.89. Alma's income for that year resulted from the gain she received from the sale of Coca Cola stock held in her name. This stock, in the amount of 10 shares, was purchased approximately in 1932. In 1935 there was a stock split and the entire stock dividend over and above the original shares received was sold in 1940 to provide funds for the construction of a house. The cost of the house was approximately $9,000. The balance of the stock was sold in 1943.

Beginning in 1941 the petitioner and his wife made a series of stock purchases using the petitioner's funds. Some of this purchased stock was placed in the wife's name. Other stock purchases made by the petitioner were placed in his own name.

Petitioner and his wife received dividends from stock held by them in the years 1943, 1944, and 1945 in the amounts of $502.75, $1,691.25, and $2,478.75, respectively. No dividend income was reported by the petitioner and his wife on income tax returns for those years.

In 1911 or 1912 the petitioner acquired dental equipment for his office at an approximate cost of $5,000. In 1935 he acquired dental equipment at a cost of $1,038.58; in 1944 he acquired dental equipment at a cost of $234; and in 1948 he acquired dental equipment at the discount price of $651.70. This equipment was owned continuously until at least January 1, 1950. The useful life of the dental equipment owned by the petitioner was 15 years and the proper rate of depreciation for this equipment was 6⅔ per cent.

Respondent computed the net income of the petitioner and his wife for the years 1943 through 1949 by the use of the net worth plus nondeductible personal expenditures method. This computation shows an opening net worth, as of December 31, 1942, in the amount of $19,979.09, consisting of cash in banks, $4,439.43; stocks and bonds, $4,255; automobile, $1,000; real estate, $9,000; office equipment, $6,038.58; loans and accounts receivable, $800; and liabilities in the amount of $5,553.92. For each of the years 1943 through 1949 the respondent allowed a deduction of $50 for charitable contributions and showed personal living expenses in the amount of $3,000. The increased net income for the years involved, as shown by the respondent's net worth computation, was as follows:

| Year | Net income corrected | Net income per return | Increased net income |
|------|---------------------|----------------------|---------------------|
| 1943 | $10,658.45 | $1,643.33 | [1] $9,015.12 |
| 1944 | 17,081.74 | 1,709.31 | [1] 15,372.43 |
| 1945 | 19,751.50 | 1,508.44 | [1] 18,243.06 |
| 1946 | 14,120.39 | 3,573.51 | [2] 10,546.88 |
| 1947 | 9,590.06 | 3,043.57 | [2] 6,546.49 |
| 1948 | 10,007.81 | 4,134.29 | [1] 5,873.52 |
| 1949 | 14,237.57 | 3,258.55 | [2] 10,979.02 |

[1] Increased net income of Richard F. Smith.
[2] Increased net income of Richard F. Smith and Alma M. Smith.

On January 21, 1952, there was filed in the United States District Court for the Eastern District of South Carolina an indictment containing charges of the grand jury in five counts charging the petitioner with willfully and knowingly attempting to defeat and evade a large part of his income tax due and owing by him for the years 1945, 1946, 1947, 1948, and 1949, respectively, by causing to be prepared and filed false and fraudulent income tax returns for such years. On

March 11, 1953, after a plea of not guilty by the petitioner, he was found guilty by the jury on counts four and five of the indictment and he was acquitted on counts one, two, and three. A sentence was imposed of 9 months' imprisonment, with a fine of $100. The sentence was suspended and the petitioner was placed on probation for a period of 3 years. Petitioner paid to E. C. Cushman, an attorney, the amount of $2,500 for defending him in the criminal trial. The payment was for no other purpose. The petitioner also expended $175.11 for travel expenses in connection with the criminal trial.

A part of the deficiency for each of the years 1943 through 1949 is due to fraud with intent to evade tax. Each of the income tax returns filed by Richard F. Smith for the years 1943, 1944, 1945, and 1948, and each of the joint income tax returns filed by Richard F. Smith and his wife for the years 1946, 1947, and 1949 was false and fraudulent and was filed with willful intent to evade taxes.

Petitioner and his wife are not entitled to a deduction on their joint income tax return for the year 1953 for the attorney fees in the amount of $2,500 or the travel expenses in the amount of $175.11 incurred in the unsuccessful defense of the petitioner in the criminal action for evasion of taxes against him in that year.

OPINION.

Respondent computed the taxable income of the petitioner and his wife for the years 1943 through 1949 by means of the net worth plus nondeductible personal expenditures method.

It is not contended that respondent was in error in computing petitioners' tax for the years 1943 to 1949 by the net worth method and there is no dispute over the bulk of the items in the net worth computation. The central issue is as to the opening cash on hand and petitioners also dispute the figure in the net worth computation as to their personal living expenses during the years involved. In addition, there is controversy over the deductions for charitable contributions and deductions for depreciation of dental equipment taken by petitioners during the years involved.

In the respondent's net worth computation the petitioner is shown to have $4,439.43 as cash in banks on December 31, 1942, the opening date of the computation, and there is no other amount shown as cash on hand on that date. Petitioner, on the other hand, argues on brief that on that date he and his wife had at least $33,400 in cash on hand. Petitioners testified they had saved all of their salaries from their post office employment during the years 1926 to 1934; that they had also saved $100 a month from the doctor's dental practice in Clio, which he entered approximately in 1912; and that Alma received

$12,000 from her father over a period of 12 to 15 years prior to 1934 so that she could build a house. Petitioners said that by 1934 there was an accumulation of cash of $38,000 to $40,000 from the three sources: postal salaries, dental practice savings, and money from Alma's father. They testified they kept this hoard of cash in the safe in the post office in Clio and, when they moved to Beaufort, they brought with them combined savings amounting to $38,000 and that they placed such savings in the refrigerator, beneath the vegetable trays, and that such savings were not used until sometime in 1940 when $9,000 was taken out to build a house. After that it is the petitioners' contention that the money was taken from the refrigerator to purchase stock during the year 1943 and the years following.

It was brought out on cross-examination that the petitioner's earnings from his dental practice prior to 1934 were placed in banks and that all such savings were lost when the banks failed in 1933. During the years 1931 through 1939 the petitioner did not file income tax returns and he explained this by testifying that he did not make enough money during those years to file returns. Such testimony is certainly inconsistent with any claims that the petitioner was able to save any cash during those years. Moreover, we cannot accept the story that the petitioner and his wife had $38,000 in 1934 when they moved to Beaufort. In 1925 the petitioner allowed two insurance policies to lapse for nonpayment of premiums and at the time of such lapse he had borrowed up to the maximum loan value of such policies. In that same year the petitioner borrowed a total of $566 on two other insurance policies. In 1932 he borrowed an additional $1,083 on his insurance policies. These loans were fully repaid by 1940.

Coming to the testimony of the refrigerator hoard, we are of the opinion that little credence can be given to the story. When Richard F. Smith was examined under oath in April of 1950, he said all of his assets on December 31, 1942, consisted of the home and money in the bank and money deposited in the post office and maybe a little stock. He told no story of any hoard of cash in his home. No probable source of any cash hoard can be gleaned from the testimony. Richard F. Smith's only income, as shown by his own testimony, was from his dental practice and he said he was a low-priced dentist practicing in a small town of a few thousand people. It is highly unlikely that the income from his practice could be the source of any cash hoard on hand December 31, 1942. It is more likely that $4,439.43 on deposit in the banks on that date was the extent of his savings from his practice.

There are discrepancies in the testimony given by petitioner, his wife, and their son. These discrepancies permeate the testimony and they have to do with the manner in which the bills were bound,

their receptacle or lack of one, the kind of bills involved, and their physical quantity. These discrepancies, together with the general vagueness of the details offered by the parties, as well as the improbability of some of the aspects of the story, impel us to reject the claim of the petitioner as to the amount of cash on hand as of December 31, 1942.

Also in dispute are the living expenses incurred by the petitioner and his wife during the years 1943 through 1949. Respondent claims that these living expenses were $3,000 per year while the petitioners argue that the living expenses were $2,000 per year. Respondent bases his estimate on certain statements made by the petitioner in 1950 when he was interviewed by revenue agents. On the other hand, we have evidence as to the simple life led by the petitioner and his wife in a small town, with a minimum of entertaining, no expenditures for tobacco or liquor, no traveling by either of them, and with few purchases in the way of clothing or household appliances. The evidence presents a picture of a frugal existence for two quite elderly persons and we think that, on the basis of all the evidence on record, the living expenses of the petitioner and his wife did not exceed $2,000 per year.

In a reply brief, petitioners assert it was not proper for the net worth computation to include the stock held in Alma's name in the net worth statement for the years in which Richard F. Smith filed individual returns. There is no merit in the argument. Since 1934 Alma did not work anywhere and she had no source of income. Petitioner's argument depends on Alma having a cash hoard in the refrigerator for it was petitioner's evidence that she made stock purchases from her cash hoard. We have found there was no such cash hoard.

All the spending was done by the petitioner, including payments for household bills and stock purchases. It further appears that at times there were amounts transferred on the records of the stock broker from the petitioner's account to Alma's account and the petitioner was unable to explain the reason for such transfers. It is also quite significant that, in the years 1943, 1944, and 1945 when Alma was supposed to have some gross income according to the petitioner's argument, the petitioner claimed an exemption credit for her on his individual income tax returns for those years. See sec. 25 (b), I. R. C. 1939. We think that the respondent was justified in including the stock in Alma's name in petitioner's net worth for the years 1943, 1944, 1945, and 1948. *William G. Lias*, 24 T. C. 280, 311, affd. 235 F. 2d 879, certiorari denied 353 U. S. 935.

Another item in dispute is the rate of depreciation on the dental equipment used by the petitioner in his office. Section 23 (1) of the Internal Revenue Code of 1939 allows as a deduction a "reasonable allowance for the exhaustion, wear and tear * * * of property used in the trade or business." The "reasonable allowance" means one based on the expected useful life of the depreciable asset in the light of facts known or reasonably ascertainable at the end of the current taxable year, *Leonard Refineries, Inc.*, 11 T. C. 1000, and in the absence of proof to the contrary, the determination of the respondent will be sustained. *Hamilton & Main, Inc.*, 25 T. C. 878. Respondent did not use the 10-year expected life for such equipment which is specified in Bulletin F, but instead, determined that the equipment had a useful life of 15 years. Petitioner argues that such equipment has a useful life of 50 years. His entire argument on brief is that "it was also testified to without contradiction that the [e]quipment Dr. Smith purchased in 1912 is still in use in his office. Dr. Smith testified that he set up a depreciation rate of two per cent upon the advice of an attorney and the fact that the equipment in his office is now forty-six years old and is still being used by him is in itself support for the two per cent rate that he used." No evidence was introduced, aside from the age of the equipment, and there was no testimony by expert witnesses. Merely pointing to the fact that the equipment purchased in 1912 is still existing by no means justifies the annual depreciation rate of 2 per cent which the petitioner claims. Other equipment was purchased more recently by the petitioner and we are told nothing about this newer equipment. We must hold, in the state of the record, that the petitioner has failed to carry his burden of proving that the respondent's determination of the expected life of the dental equipment was in error.

Petitioner, during the years 1943 through 1949, when filing an individual tax return or when filing a joint return with his wife, claimed that his charitable contributions amounted to $120, $350, $350, $500, $500, $500, and $500, respectively. It appears from the returns and from the testimony that the bulk of these contributions purportedly went to the Methodist Church, yet the petitioner testified that he was not a member of that church nor does it appear that he or his wife were members of this or any other church. In addition, the petitioner testified that he went to church "[a]bout three or four times a year" after 1941 and it seems that his wife did not attend church without her husband. On cross-examination the petitioner testified that he would sometimes put $5 in the collection plate when he was in church. No attempt was made to verify these amounts in any way. Apart from the contributions to the churches, there is also some indication on the returns that some contributions were made to miscel-

laneous charitable organizations. On the basis of the testimony and the other evidence on record we hold that the respondent was correct in his determination that the charitable contributions made by the petitioner and his wife in each of the years 1943 through 1949 were not in excess of $50 per year.

During the trial the respondent used Grace White as a witness. She was the attorney who prepared the income tax returns for the petitioner and his wife during the years 1943 through 1949. She testified that she was never shown any of the records of the petitioner and she also testified that neither the petitioner nor his wife ever reported dividend income to her which she failed to include in their returns for these years. In addition, she testified in a general fashion as to the manner in which the information was supplied to her prior to the preparation of each year's income tax return. Petitioner objects to this evidence, claiming that it is in violation of the attorney-client privilege. We do not agree with the petitioner. First, it is not at all clear that the petitioner went to the attorney for legal advice in her capacity as a legal adviser. See 8 Wigmore, Evidence sec. 2292 (3d ed.). Grace did no more than fill in returns for the petitioner on the basis of summarized statements of the petitioner's income and expenditures for each year. However, even if we assume that an attorney-client relationship did in fact exist, it is obvious that the privilege arising from such relationship was waived by the petitioner. Petitioner testified not only as to the manner in which he supplied the information to Grace and the nature of such information but he went on to say that he supplied her with a list of all his dividend income and that she failed to report such income on his returns. This, obviously, was a line of defense taken by petitioner to explain his omissions of dividend income from his returns and once the petitioner has opened this line of inquiry concerning his communications with Grace, he cannot prevent her from testifying to the same communications on the ground of privilege. Petitioner has waived the privilege. As stated by the Supreme Court in *Hunt* v. *Blackburn*, 128 U. S. 464, "When [the client] entered upon a line of defence which involved what transpired between herself and [the attorney], and respecting which she testified, she waived her right to object to his giving his own account of the matter." See also *Steen* v. *First Nat. Bank*, 298 F. 36; 8 Wigmore, Evidence sec. 2327 (3d ed.).

Respondent determined that a part of the deficiencies for each of the years 1943 through 1949 was due to fraud with intent to evade tax. The burden rests upon the respondent to prove fraud by clear and convincing evidence. *Arlette Coat Co.*, 14 T. C. 751. Petitioner was convicted in the United States District Court for the Eastern

District of South Carolina under section 145 (b) for willfully and knowingly attempting to defeat and evade a large part of his income tax due and owing by him for the years 1948 and 1949. At the same trial he was acquitted on counts under the indictment involving violation of section 145 (b) for the years 1945, 1946, and 1947. It is clear that the prior conviction for the years 1948 and 1949 under section 145 (b) is admissible as evidence here. *Abraham Galant*, 26 T. C. 354; *Stagecrafters Club, Inc.* v. *District of Columbia Division of the American Legion*, (D. C. 1953) 111 F. Supp. 127, affirmed per curiam 211 F. 2d 811. Petitioner on his 1943, 1944, and 1945 income tax returns omitted entirely the dividend income received by him on his stock and the stock held in his wife's name. This dividend income was sizable in amount and, in fact, in the year 1944 such income was nearly as great as the income reported by the petitioner; while in 1945 such dividend income was greater than the income reported. Petitioner's explanation for the omission in 1943 is the highly implausible story that the dividends were somehow kept by the broker and as for the years 1944 and 1945 he implied that he told Grace about these dividends when it came time for her to make out his returns but that she failed to include the dividend income in the returns. Grace flatly testified that Richard Smith did not tell her of any dividend income. We do not think that Richard's explanations are worthy of credence. Such specific omissions of income are certainly indicia of fraud in those years. *M. Rea Gano*, 19 B. T. A. 518. Moreover, there is the fact that the petitioner, in the years when he filed individual returns, as well as in the years when he and his wife filed joint returns, repeatedly and without exception made substantial understatements of income. As we said in *Lillian Kilpatrick*, 22 T. C. 446, 458, affd. 227 F. 2d 240, "Repeated gross understatements of income without an adequate explanation, even over a period of a few years, are evidence of fraudulent intent." We are also persuaded from the record that the petitioner and his wife were aware that they were understating their income for the years 1943 to 1949, especially when it appears that over this same period there was an increase in their stock and securities and their cash in bank of approximately $68,000; while during the same period they reported on their income tax returns net income of approximately a third of that amount.

Petitioners were evasive witnesses. Also in the early stages of the investigation they were uncooperative in revealing their true income. They told of keeping a separate book for each year showing the receipts and disbursements in the dental practice. When the agent first called on Richard in 1950 it was their story that all of these books, including the books for the years 1943 to 1949, were deliberately

burned shortly after the 1949 income tax return had been filed. At that time Richard said he had no other books showing his income. It was not until shortly before trial that petitioners produced a book showing their stock purchases and dividend income since 1943. We hold, on the basis of all the evidence, that a part of the deficiencies for each of the years 1943 through 1949 was due to fraud with intent to evade tax within the meaning of section 293 (b).

Our finding that the returns with respect to the years 1943 through 1949 were fraudulent disposes of the statute of limitations issue raised by the petitioners with respect to these years. Sec. 276 (a).

On the joint returns filed in 1953, there was claimed a deduction for expenses totaling $2,675.11. Respondent disallowed this deduction. Out of this total the amount of $2,500 represented legal fees incurred by the petitioner, Richard F. Smith, in the criminal action against him in 1953, when he was convicted under section 145 (b) for the years 1948 and 1949. The balance of this total apparently represented incidental expenses of $175.11, incurred in the same criminal action, for travel of witnesses and for the United States marshal connected with the trial. There is nothing in the record to show that any part of these expenditures was expended for anything other than the criminal action.

Petitioners seem to argue that because Richard was acquitted on three of the five counts in the indictment, he is entitled to have all or a portion of the expenses for his criminal defense allowed as a deduction. There are cases where the expenses of a successful defense in a criminal action are deductible as an ordinary and necessary business expense. (Sec. 23 (a) (1) (A), I. R. C. 1939.) They are cases where the criminal charge was directly connected with, or proximately resulted from, a taxpayer's business or the practice of his profession. *Morgan S. Kaufman*, 12 T. C. 1114; *Union Investment Co.*, 21 T. C. 659. Even if we were to hold in the instant case that the expenses were incurred in a partially successful defense of a criminal action, no portion would be deductible. The acts which resulted in the criminal charge were not directly connected with Richard's business. The acts charged, "knowingly attempting to defeat and evade a large part of his income tax due and owing by him to the United States," were not ordinary in the sense that they are normally incidental in carrying on the business of a dentist or dealer in securities. We hold the expense of an attorney defending the criminal income tax case would not qualify as a business expense under this record.

*Decisions will be entered under Rule 50.*