Alfred B. Cenedella, et al. [1] v. Commissioner. Cenedella v. Commissioner
Docket Nos. 73189-73190, 74105.
United States Tax Court
T.C. Memo 1962-39; 1962 Tax Ct. Memo LEXIS 265; 21 T.C.M. (CCH) 209; T.C.M. (RIA) 62039; February 28, 1962
*265 1. Petitioner, Alfred B. Cenedella, was a practicing attorney and was elected district attorney for Worcester County, Massachusetts, in 1946. He recorded his salary and his fees received from his law practice in daily receipt records and reported his income for tax purposes from those records. He failed to record a number of legal fees received during the years 1948, 1949, and 1950 in his receipt record. Respondent reconstructed petitioner's income by use of the increase in net worth and nondeductible expenditures method for the year 1945 through 1951. Petitioner was tried and convicted of criminal tax evasion for the years 1947, 1948, 1949, and 1950. Held, respondent has failed to prove that petitioner's returns for the years 1945, 1946, and 1951 were fraudulent. Assessment and collection of deficiencies for the years 1945 and 1946 are barred by the statute of limitations. Held, further, petitioner's returns for the years 1947, 1948, 1949, and 1950 were fraudulent with intent to evade tax. 2. Petitioner's correct income for the years 1947-1951 redetermined by the net worth and expenditures method. 3. Petitioners are not entitled to a deduction for legal and accounting fees paid *266 in 1954 in unsuccessfully defending the criminal fraud charges. Thomas J. Carens, Esq., for the petitioners. Raymond T. Mahon, Esq., and Alexander L. Ross, Jr., Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and *267 Opinion DRENNEN, Judge: In these consolidated proceedings respondent determined the following deficiencies in income tax and additions to tax due from petitioners: Additions to tax, I.R.C. 1939
Docket
Sec. 294
No.
Year
Deficiency
Sec. 293(b)
(d)(1)(A)
Sec. 294(d)(2)
73189
1945
$ 997.58
$ 498.79
$ 97.35
$ 58.41
1946
2,636.17
1,318.09
213.34
128.00
73190
1947
5,349.77
2,674.89
543.64
326.18
1948
1,783.96
891.98
150.73
90.44
1949
3,337.74
1,668.87
350.97
210.58
1950
3,260.94
1,630.47
357.61
214.57
1951
582.68
291.34
101.13
60.68
74105
1954
1,015.69
The issues for decision are: (1) Whether respondent correctly computed the income of petitioner Alfred B. Cenedella for the taxable years 1945 through 1951 by use of the increase in net worth plus nondeductible expenditures method. (2) Whether any part of the deficiencies for any of the taxable years 1945 through 1951 is due to fraud with intent to evade tax. (3) Whether assessment and collection of deficiencies for any of the taxable years 1945 through 1951 are barred by the statute of limitations. (4) Whether petitioner is entitled *268 to deduct as a business expense in 1954 the amount of $3,000, representing attorney's and accountant's fees incurred by him in unsuccessfully defending a criminal charge of tax evasion for the taxable years 1947-1950 in the United States District Court for the District of Massachusetts. (5) Whether petitioners are liable for additions to tax under sections 294(d)(1)(A) and 294(d)(2), I.R.C. for 1939, for the years 1945-1951. Findings of Fact Some of the facts have been stipulated and are found accordingly. During the period here involved, petitioners Alfred B. Cenedella and Florence H. Cenedella, hereinafter referred to as Alfred and Florence, respectively, were husband and wife residing in Milford, Massachusetts. Alfred filed individual income tax returns for the taxable years 1945 and 1946 with the collector of internal revenue, Boston, Massachusetts. Alfred and Florence filed joint returns for the taxable years 1947-1951 with the collector of internal revenue, Boston, Massachusetts. Alfred filed an individual return for the taxable year 1954 with the district director of internal revenue, Boston, Massachusetts. Alfred (who will be referred to herein as petitioner) is an *269 attorney engaged in the practice of law and has been so engaged since 1910. In 1930 he was appointed to the Industrial Accident Board of Massachusetts, from which he resigned in 1936 to become assistant district attorney for Worcester County, Massachusetts, a position he held until 1946 when he was elected district attorney. Petitioner was able to and did maintain a law practice during the time he was assistant district attorney and district attorney. As a record of receipts of his law practice for the years 1948, 1949, 1950, and 1951, petitioner kept diaries in which he recorded fees received as well as the net amount of his monthly salary from the Commonwealth of Massachusetts. He had one diary for each of the above years, but produced no record of his receipts for the years 1945, 1946, and 1947. Each diary contained pages at the top of which was printed "Cash Account" and the name of each month in the year. Petitioner recorded for each month some of the fees which he had received that month, the amounts and payors of the fees, the dates they were received, and his salary from the State. At the end of each month petitioner totaled the receipts recorded, and added the monthly total *270 to the total for the year. Thus, petitioner recorded a running total for recorded receipts for the year to the end of each month. At the end of the year petitioner subtracted his total salary from the State from total recorded receipts. The difference he considered gross receipts from his law practice and so reported it on his income tax returns. For the year 1948 he recorded total receipts of $9,405, including net salary from the Commonwealth of Massachusetts in the amount of $6,388. He subtracted $6,388 from the total of $9,405 and reported, on his return for 1948, the difference of $3,017 as gross receipts from his business. However, for the years 1949 and 1950 he subtracted the amount of his gross salary from his total receipts and considered the difference as gross receipts from his practice. This resulted in an understatement of gross receipts from his law practice for 1949 and 1950 by the amount of income tax withheld from his salary. Petitioner apparently kept similar records for the years 1945, 1946, and 1947 but they had been lost or destroyed at the time of the tax investigation in 1952. It has been stipulated by the parties that during the years 1948, 1949, and 1950 *271 petitioner received certain fees in his law practice which he did not record in his daily record of receipts and which were not included in his income reported for tax purposes. There were 14 of these unreported fees stipulated to have been received during the year 1948, totaling approximately $2,550; 14 received in 1949, totaling approximately $4,350; and 12 received in 1950, totaling approximately $1,500. These fees were generally received in one of the following ways: Petitioner would receive a check payable either to him and his client, or to him as attorney for the client whom he represented, in settlement of his client's claim. Petitioner would deposit the check in his own bank account, then write a check to the client for his share of the settlement, pay certain expenses, and then retain the balance of the amount received as his fee. Some of the checks received represented proceeds of loans obtained for clients or sales of property for clients, some of them represented assets distributed to his clients in settlement of estates, and some of them represented funds he received as attorney for the fiduciary of an estate. His accounting was done in much the same manner whatever the *272 capacity in which he received the checks. Some of the checks were payable directly to petitioner in payment for services rendered. In addition to the unreported fees above, evidence introduced at the trial shows that petitioner also received fees in 1948, 1949, 1950, and one fee of $115 in 1951, all or a part of which he did not record in his daily receipts record or report on his returns. These were principally fees received as fiduciary of various estates, and the unreported part thereof totaled approximately $6,000 over the period. In September 1948 petitioner's daughter and son-in-law, Magruder, who had no children, came to live with petitioner and apparently remained with him throughout the year 1951. From time to time Magruder gave money to petitioner to help pay for their living expenses. We find these amounts to be $480 in 1948, and $1,000 in each of the years 1949, 1950, and 1951, and that these amounts were nontaxable income to petitioner. Magruder was living in California at the time of the trial and did not testify. Petitioner had an accumulation of cash on hand prior to 1945 which he had accumulated from various sources and kept in his safety deposit box. The amount *273 of cash on hand at December 31, 1946, was $2,000; at December 31, 1947, was $1,500; at December 31, 1948, was $1,000; at December 31, 1949, was $500; and at December 31, 1950, and 1951, was zero. Petitioner was not indebted to his son for legal fees as of December 31 of any of the years 1945-1951. On January 14, 1954, the Federal grand jury for the district of Massachusetts returned an indictment, charging in counts 1, 2, 3, and 4 that petitioner did willfully and knowingly attempt to evade and defeat a large part of the income taxes due and owing by him and his wife for the taxable years 1947 to 1950, inclusive, respectively, by filing false and fraudulent joint income tax returns with the collector of internal revenue for the district of Massachusetts. On January 14, 1955, petitioner was found guilty on all counts of the indictment returned against him on January 14, 1954, and was sentenced to a total fine of $2,000 and 4 months' imprisonment on each count, the prison sentences to run concurrently. Petitioner was not disbarred from the practice of law as a result of these proceedings. On March 12, 1956, before the expiration of the time prescribed in section 275(c), I.R.C. *274 1939, for assessment of additional income taxes against petitioners for the taxable year 1950, petitioners and respondent agreed in writing pursuant to section 276(b), I.R.C. 1939, to extend to June 30, 1957, the time within which respondent might assess additional income taxes against petitioners for the taxable year 1950. A similar agreement was executed on February 15, 1957, extending to June 30, 1958, the period for assessing additional income taxes against petitioners for the taxable year 1950. On January 28, 1955, before the expiration of the time prescribed in section 275(a), I.R.C. 1939, for assessment of additional income taxes against petitioners for the taxable year 1951, petitioners and respondent agreed in writing pursuant to section 276(b), I.R.C. 1939, to extend to June 30, 1956, the time within which respondent might assess additional income taxes against petitioners for the taxable year 1951. Thereafter, on March 12, 1956, and on February 15, 1957, similar agreements were executed extending to June 30, 1957, and June 30, 1958, respectively, the period for assessing additional income taxes against petitioners for the taxable year 1951. Petitioner deducted the amount *275 of $3,000 on his 1954 income tax return, which amount was paid to his attorney and his accountant in connection with the preparation and trial of his criminal tax evasion case during the taxable year 1954. The following computation of increases in net worth plus nondeductible expenditures correctly reflects petitioner's adjusted gross income [2] and the adjusted gross income reported by him during the period January 1, 1947, through December 31, 1951. All items on the statement, except those in blocks and the totals, are stipulated to be correct and are as found by respondent in the net worth statement attached to his answer filed herein. The items shown in blocks represent our findings of fact on all items in dispute. That portion of the statement showing net worth items for December 31, 1944, and net worth and exepnditures for the years 1945 and 1946 reflect only items stipulated to be correct and additional items as found by respondent. It does not purport to reflect the correct income of petitioner for the years 1945 and 1946, and is for purposes of discussion only. *276 ASSETS
12-31-44
12-31-45
12-31-46
12-31-47
Cash on hand
$[2,000.00]
$[1,500.00]
Home Natl. Bank stock
$ 300.00
$ 300.00
300.00
3,600.00
N.E. Elec. Co. stock
575.00
Chrysler auto No. 1
1,300.00
1,300.00
1,300.00
Chrysler auto No. 2
1,973.06
1,973.06
Buick auto
1,800.00
1,800.00
Cadillac auto No. 1
3,076.25
Cadillac auto No. 2
Awnings, shades &
361.51
screens
Furniture
2,500.00
2,500.00
2,710.00
2,950.00
Loans receivable
Real estate
14,500.00
14,500.00
14,500.00
14,635.00
Furs
438.00
Bank accounts: Worcester Fed. S&L
Assn.
Milford Fed. S&L Assn.
81.01
511.44
524.29
2,136.05
No. 62
Milford Svgs. Bank No.
86.54
1,100.14
1,119.86
3,103.17
34125
Home Natl. checking
1,805.36
17,126.43
4,989.09
232.08
acct.
Office equipment
Notes receivable
2,000.00
2,000.00
2,000.00
2,000.00
Total assets
$24,372.91
$41,138.01
$31,416.30
$36,580.12
LIABILITIES
Mortgage payable
$ 3,500.00
$ 2,700.00
$ 2,100.00
$ 1,000.00
Loans payable
1,500.00
1,500.00
1,500.00
1,500.00
Due clients
250.00
17,673.65
5,285.10
6,466.07
Depreciation reserve -
$ 1,040.00
$ 1,300.00
$ 1,365.77
$ 460.38
autos
Depreciation reserve -
equip.
Total liabilities
$ 6,290.00
$23,173.65
$10,250.87
$ 9,426.45
NET WORTH
$18,082.91
$17,964.36
$21,165.43
$27,153.67
PRIOR YEAR'S NET WORTH
18,082.91
17,964.36
21,165.43
NET WORTH INCREASE
$ (118.55)
$ 3,201.07
$ 5,988.24
(DECREASE)
DEDUCT: Deductible portion -
$ 500.00
capital gain
Life insurance proceeds
965.00
Gifts
Magruder's
contributions
$ 4,523.24
ADD: Gifts
$ 995.20
$[2,827.88]
Living expenses
$ 5,200.00
7,500.00
9,827.60
Insurance premiums
1,418.35
2,010.54
1,959.12
Federal income tax
621.60
478.68
547.80
Nondeductible loss
600.00
Adjusted gross income -
$ 7,121.40 b
$14,785.49 c
$19,685.64
corrected a
Adjusted gross income
4,449.54
3,493.99
8,107.34
reported
Income omitted
$11,578.30
*277 ASSETS
12-31-48
12-31-49
12-31-50
12-31-51
Cash on hand
$[1,000.00]
$ [500.00]
[0]
[0]
Home Natl. Bank stock
3,600.00
3,600.00
$ 3,600.00
$ 3,600.00
N.E. Elec. Co. stock
575.00
575.00
575.00
575.00
Chrysler auto No. 1
Chrysler auto No. 2
1,973.06
1,973.06
1,973.06
Buick auto
Cadillac auto No. 1
3,076.25
3,076.25
3,076.25
3,076.25
Cadillac auto No. 2
4,198.00
Awnings, shades &
404.76
404.76
404.76
404.76
screens
Furniture
3,480.90
3,925.85
3,925.85
3,925.85
Loans receivable
3,000.00
2,700.00
2,700.00
Real estate
14,635.00
14,635.00
14,635.00
14,635.00
Furs
438.00
713.00
3,555.50
4,135.50
Bank accounts: Worcester Fed. S&L
106.09
765.63
1,425.81
1,631.23
Assn.
Milford Fed. S&L Assn.
1,501.23
4,522.86
4,324.46
2,594.29
No. 62
Milford Svgs. Bank No.
3,113.53
6,072.81
5,093.61
3,091.02
34125
Home Natl. checking
61.12
1,487.81
595.15
1,020.58
acct.
Office equipment
130.00
Notes receivable
Total assets
$36,964.94
$44,952.03
$45,684.45
$43,017.48
LIABILITIES
Mortgage payable
$ 300.00
Loans payable
1,500.00
$ 1,500.00
$ 1,500.00
$ 1,500.00
Due clients
9,275.97
10,010.97
8,100.64
12,251.58
Depreciation reserve -
854.99
1,249.60
1,644.21
652.77
autos
Depreciation reserve -
26.00
equip.
Total liabilities
$11,930.96
$12,760.57
$11,244.85
$14,430.35
NET WORTH
$25,033.98
$32,191.46
$34,439.60
$28,587.13
PRIOR YEAR'S NET WORTH
$27,153.67
$25,033.98
$32,191.46
$34,439.60
NET WORTH INCREASE
[2,119.69)
$ 7,157.48
$ 2,248.14
[5,852.47)
(DECREASE)
DEDUCT: Deductible portion -
$ 330.29
capital gain
Life insurance proceeds
Gifts
$ 4,750.00
Magruder's
$[ 480.00]
$[1,000.00]
$[1,000.00]
$[1,000.00]
contributions
[2,599.69)
$ 1,407.48
$ 1,248.14
[7,182.76)
ADD: Gifts
$[2,222.01]
$[1,992.60]
$[2,272.50]
$[2,741.30]
Living expenses
10,094.39
12,723.15
12,214.46
10,665.62
Insurance premiums
2,039.38
2,199.91
2,065.33
2,092.70
Federal income tax
1,101.10
635.36
1,130.76
1,434.76
Nondeductible loss
Adjusted gross income -
$12,857.19
$18,958.50
$18,931.19
$ 9,751.62
corrected a
Adjusted gross income
7,142.24
8,744.58
9,411.48
9,654.75
reported
Income omitted
$ 5,714.95
$10,213.92
$ 9,519.71
$ 96.87
*278 Petitioner's returns for the taxable years 1945, 1946, and 1951 were not false and fraudulent with intent to evade tax. Petitioner's returns for the taxable years 1947 through 1950 were false and fraudulent with intent to evade tax. At least part of the deficiency due from petitioners for each of those years is due to fraud. Opinion Respondent determined the deficiencies in petitioner's income for the years 1945-1951 by the increase in net worth and nondeductible expenditures method. While petitioner appears to question respondent's right to reconstruct income by this method in his pleadings filed herein, he does not specifically allege it as error in his petitions, does not seriously argue it on brief, and, in fact, stipulated most of the items appearing in the net worth statement. Further, it is obvious from the fees stipulated to have been received by petitioner in the years 1948-1950 and not recorded in his daily receipts book, and from the fact that petitioner was unable to produce his daily receipts records for 1945-1947, that *279 petitioner's books and records were not adequate to properly reflect or determine his income, and respondent's resort to the net worth and expenditures method for reconstructing income was justified. Holland v. United States, 348 U.S. 121 (1954). While neither party offered in evidence a net worth and expenditures statement, such a statement, which supports in detail the unreported income determined by respondent, was attached to respondent's answer filed herein. The parties stipulated most of the items appearing on respondent's statement and that statement will be considered the basic net worth statement from which petitioner's adjusted gross income for the years 1945-1951 should be reconstructed. All the items contained in that net worth statement, including assets, liabilities, nontaxable income, and nondeductible expenditures, and the amounts thereof, are stipulated to be correct except for an item of cash on hand, which does not appear on respondent's statement, the amount of gifts made by petitioner during each of the years 1946-1951, and the amount of petitioner's living expenses in the year 1946. In addition, petitioner claims that he should receive credit during *280 each of the years 1948-1951 for nontaxable income in the form of contributions to help defray living expenses received from his son-in-law, Magruder, who was living with petitioner during that period, and for his son's share of certain legal fees which petitioner received and credited against amounts he had advanced to the son which were included by respondent in nondeductible expenditures as gifts. Petitioner also claims his liability for amounts due clients should be increased by $1,000 in 1949. We have included in our Findings of Fact a net worth and expenditures statement which reflects all of the stipulated net worth items and our findings with respect to the disputed items, the latter being blocked in the statement, and have concluded that petitioner's correct adjusted gross income [3] for the years 1947-1951 was as reflected on that statement. The years 1945 and 1946 are included on the statement for information only and we make no findings as to the correct income of the petitioner for those years for reasons which are apparent. Fraud Issue Assessment and collection of any deficiencies in and additions to tax for the years 1945 through 1950 are *281 barred by the statute of limitations, sec. 275(a), I.R.C. 1939, unless the returns for those years were fraudulent. [4] The burden of proving fraud is on respondent. Sec. 1112, I.R.C. 1939. Respondent bases his proof of fraud principally on the consistent understatement of income throughout the period, as shown on his net worth reconstruction of income, on the agreed fact that approximately 40 different specific fees totaling about $2,550 in 1948, $4,350 in 1949, and $1,500 in 1950, and the proven fact that approximately $6,000 in additional specific fees during the same period, were received by petitioner in those years and were not recorded on his books or included in his reported income, and on the fact that petitioner was indicted and found guilty by a jury of criminal tax evasion for each of the years 1947, 1948, 1949, and 1950. From a review of all the evidence, we have found that respondent has failed to prove by the clear and convincing *282 evidence required, Arlette Coat Co., 14 T.C. 751 (1950), W. A. Shaw, 27 T.C. 561 (1956), affd. 252 F. 2d 681 (C.A. 6, 1958), that petitioner filed false and fraudulent returns for the years 1945, 1946, and 1951. Consequently, assessment and collection of any deficiencies for the years 1945 and 1946 are barred and we need not determine the correct income for those years. The only proof of fraud for the years 1945, 1946, and 1951 is a pattern of unreported income over the entire net worth period if respondent's net worth and expenditures statement is accepted as correct. We recognize that direct and clear-cut proof of fraud is often unavailable and that the consistent understatement of substantial amounts of income is persuasive evidence of fraud. United States v. Calderon, 348 U.S. 160 (1954). However, where the respondent relies primarily on substantial understatement of income for proof of fraud, we must examine his proof of the understatement with the thought in mind that the burden of proof is on respondent. This seems particularly appropriate where, as here, the respondent's net worth statement itself, without taking any cash *283 on hand at the beginning of 1945 in consideration, reveals a decrease in net worth of $118.55 for 1945, an increase in net worth of only $1,201.07 for 1946, a decrease in net worth of $5,852.47 for 1951, and a total increase in net worth over the entire period 1945-1951 of about $10,500. During this period the petitioner reported total net income of in excess of $40,000 and for each of the years 1945, 1946, and 1951 the reported net income was in excess of any actual increase in net worth. Of course the so-called "below the line" adjustments for nontaxable income and nondeductible expenditures are an indispensable part of the computation of taxable income by the net worth method, but when respondent relies entirely on such adjustments for proof of fraud, we think he has a heavier burden of showing that he has run down suggested sources of nontaxable income and that nondeductible expenditures have some basis for accuracy even though they might necessarily be estimates, than he has when the amount of deficiency in tax alone is involved, where the burden of proof is on taxpayer to show respondent is wrong. It seems quite possible that in situations like this the evidence offered will *284 not be sufficient to prove fraud but at the same time will not be sufficient to overcome the presumptive correctness of respondent's deficiency determinations. Cf. Snell Isle, Inc. v. Commissioner, 90 F. 2d 481 (C.A. 5, 1937), affirming a Memorandum Opinion of this Court, certiorari denied 302 U.S. 734 (1937); L. Schepp Co., 25 B.T.A. 419, 437 (1932). In other words, this Court cannot be expected to infer fraud from a bare computation of unreported income based on estimates of nondeductible expenditures without at least some showing that the estimates are reasonable, that the estimated items do not in fact include deductible expenditures, and that reasonable efforts have been made to credit taxpayer with all nontaxable income he claims to have received. See Holland v. United States, supra. The unreported income determined by respondent was $3,631.50 for the year 1945, $11,391.48 for the year 1946, and $2,282.62 for the year 1951. As hereinafter discussed, we have found that in computing petitioner's income by the net worth and expenditures method he should be allowed credit for some cash on hand at December 31, 1944, which petitioner *285 testified he used during the years 1945-1951, and for a certain amount of nontaxable income in the form of contributions toward living expenses made by petitioner's son-in-law in the years 1948-1951. As so adjusted, the amount of petitioner's unreported income for the years 1945 and 1951 is so small that it alone is not indicative of fraud, absent some other proof, and this is particularly true if we are correct in our assumption that in computing petitioner's unreported income in the deficiency notice respondent has failed to give petitioner credit for the itemized deductions claimed on his returns, and which we do not understand to be in dispute, in the amount of $959.64 for 1945 and $1,225.75 for 1951. This point is discussed at the conclusion of this Opinion. With respect to the year 1946, the unreported income determined by respondent justifies more careful scrutiny on the issue of fraud. Petitioner's explanation of the discrepancy in his reported income and that found by respondent is primarily that he used cash on hand and gifts received from friends during that year in his campaign for the office of district attorney and which he considered to be nontaxable income. Petitioner *286 introduced in evidence the names and amounts given by these contributors, totaling about $7,000. While it is true that petitioner did not offer to corroborate his own testimony on this point by the testimony of any of the contributors, neither did respondent offer any evidence to refute petitioner's testimony. We do not think it improbable that petitioner did use some of his campaign contributions to defray his living expenses and we accept his testimony that he did in the absence of any conflicting evidence. Respondent, whose agents admit this source of income was mentioned by petitioner during the investigation, argues that campaign contributions used for personal living expenses are taxable income anyway, citing William O'Dwyer, 28 T.C. 698 (1957), affd. 266 F. 2d 575 (C.A. 4, 1959), certiorari denied 361 U.S. 862 (1959), and Rev. Rul. 54-80, 1954-1 C.B. 11. But the question here is whether petitioner knew at the time that these contributions were taxable income and deliberately failed to include them in his income in an effort to evade tax. Petitioner testified that the contributions totaling approximately $7,000 were in *287 addition to other campaign contributions he received and used to cover campaign expenses, and that the contributors gave them to him with the understanding that they were gifts to help cover his living expenses during the campaign when he could not devote much time to his law practice. The authorities relied on by respondent came long after 1946. Petitioner did not offer proof of specifically when his cash hoard was used during the net worth period. We believe that he would have used cash on hand during his campaign in 1946, and that this would have helped account for the spread in his net worth for the years 1945 and 1946. By use of cash on hand [5] and campaign contributions, most if not all of the unreported income for 1946 computed by the net worth method can be explained. Absent other evidence of fraud, we cannot find that respondent has proven fraud for the years 1945, 1946, and 1951. See Holland v. United States, supra; W. A. Shaw, supra. With respect to the years 1947, 1948, 1949, and 1950, the evidence is quite different. Even with the adjustments we have made in the net worth statement the unreported *288 income for each of those years is rather large, and no reasonable explanation of why this occurred was offered by petitioner. Furthermore, petitioner has agreed that numerous specific fees received by him during 1948, 1949, and 1950 were not recorded on his books nor reported on his returns; and respondent's evidence proves additional unreported fees received during these years. Some of these fees were from clients included on the list offered in evidence by petitioner to prove amounts owing to his son. If we accept petitioner's testimony that he credited parts of these fees to his son's account from time to time, it seems unreasonable that he would simply have overlooked entering his share of the fees on his daily receipt books at the same time. A number of these unreported fees were from estates where specific approval of the fee was obtained from the probate court, and again it is hard to believe that petitioner could have just forgotten to enter these fees in his records. And finally, petitioner was tried and convicted of criminal tax evasion for each of the years 1947-1950. This fact is strong evidence of civil fraud. Abraham Galant, 26 T.C. 354 (1956); Richard F. Smith, 31 T.C. 1 (1958). *289 Upon consideration of the entire record we have concluded that respondent has demonstrated by clear and convincing evidence that petitioner's returns for the years 1947, 1948, 1949, and 1950 were false and fraudulent with intent to evade tax and that at least a part of the deficiency for each of those years is due to fraud on the part of petitioner. The additions to tax for fraud for each of those years is sustained and assessment and collection of deficiencies in tax for those years are not barred by the statute of limitations. Sec. 276(a), I.R.C. 1939. Determination of Income for the Years 1947-1951 In determining petitioner's correct income by the net worth and expenditures method, we have made certain adjustments to the statement prepared by respondent based on the evidence submitted at the trial. Petitioner claims he had $14,000 in cash in his safety deposit box at the end of 1944 which he used to acquire assets and live on during the period 1945-1951. We believe petitioner did have some cash on hand at the beginning of 1945, possibly as much as $7,500, as hereinafter discussed. However, we think it likely that he used a considerable portion of this during 1945 and particularly *290 1946. Using our best judgment from the evidence before us, we have found as a fact, as reflected in our net worth statement, that he had $2,000 cash on hand at the beginning of 1947, $500 of which he used during each of the years 1947, 1948, 1949, and 1950. Were the net worth period shorter we might hesitate to apply the accumulated cash in such a manner. The net worth method of reconstructing income is at best only a means of approximating income, and errors inherent in the method can easily be compounded by allocating items to the wrong years. But the likelihood of serious error is at least minimized when the net worth method covers an extended period. Convinced as we are that petitioner had some cash on hand at the beginning of the net worth period which he used during the net worth period, we must allocate its use in some manner and have chosen the above method as the least likely of being prejudicial to either party. Petitioner testified that the cash was accumulated over a period of years since the bank closings in 1933 from his salary from the Industrial Accident Board of Massachusetts and from a "gift" of $5,000 received from his sister in 1942 and a "gift" of $2,500 from *291 his brother received in 1939, in appreciation of legal services rendered for relatives. Respondent offered evidence of the amount of tax paid by petitioner in prior years to indicate that petitioner could not have earned the $7,500 between 1938 and 1942. But this does not negative the possibility that petitioner had unreported income in that amount, whether taxable or nontaxable. Nor are we too impressed with respondent's argument that petitioner could not have had cash on hand because he borrowed small amounts on his life insurance from time to time. It is obvious from respondent's own net worth statement that petitioner carried these loans and a mortgage on his house at the same time he had rather sizeable amounts of cash on deposit in various bank accounts. Respondent also claims that petitioner did not mention a cash hoard when respondent's agents first asked him about his assets and liabilities during the net worth period. However, the agents testified that they did not ask petitioner specifically about any cash on hand and it also appears that at that time they may have been more interested in working up a case for criminal prosecution on the basis of specific items of unreported *292 income rather than on a net worth basis. There is evidence that petitioner deposited various amounts of cash in his bank account from time to time that were not traced to specific fees or salary and petitioner claims they were made from his cash on hand. While the evidence on this item is not too convincing, we think it is sufficient to prove that petitioner did have some cash on hand at the beginning of 1945. We have done our best to determine the amount in the light of the evidence we have. Cf. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). We believe petitioner may have had about $7,500 cash on hand at the beginning of 1945, the larger part of which he used in 1945 and 1946, and we have found as a fact that he had $2,000 cash on hand at the beginning of 1947. Cf. Abraham Galant, supra. The only other adjustment we have made to respondent's net worth statement for the years 1947 through 1951 is to allow petitioner credit for nontaxable income of $480 in 1948 and $1,000 in each of the years 1949-1951 as contributions for living expenses received from petitioner's son-in-law. Petitioner's testimony stands uncontradicted that his daughter and son-in-law, *293 who had no children, came to live with petitioner in 1948 and began contributing cash toward the cost of food and other living expenses. There is no evidence that the payments were rent or any other form of taxable income and petitioner has claimed no deductions for expenditures made in producing rental income. It is reasonable to assume that the son-in-law would contribute something toward their cost of living and we are inclined to believe petitioner's testimony on this issue. However, petitioner's proof of the amounts received from Magruder is so meager that we have not been able to accept the entire amount claimed by petitioner. Petitioner's testimony indicates that he computed the amounts claimed at $30 per week every week of the year. However, there is very little evidence that the payments were made every week in that amount. The burden of proof on this issue was on petitioner and we have used our best judgment on what evidence we have in arriving at the amounts we have allowed. We have not allowed petitioner an additional liability or a reduction in gifts or living expenses for fees purportedly earned by petitioner's son and offset against advances to the son, as claimed *294 by petitioner. In support of this claim petitioner offered in evidence a small card for each of the years 1947, 1948, 1949, and 1950, purporting to show credits to the son's account for services rendered of specific amounts on certain dates and on specified cases. As we understood petitioner's testimony, the entries on these cards were supposed to have been made when the fees were received. However, they look very much as though they had all been made at the same time with the same pen. They apparently were not used in the criminal trial. Some of the cases or clients listed appear in petitioner's daily receipt books, but most of them do not. Some of them can be matched with the stipulated unreported fees but a few of them cannot be matched with any reported or unreported fee. Petitioner did not include most of these fees in his own income. The son was called as a witness by respondent and testified that he was doubtful that he reported any of the amounts credited to his account as income on his own tax returns and explained that the accounting was a bookkeeping item his father took care of himself. We gather from the son's testimony that he had very little knowledge that he was being *295 credited with anything and certainly that there was no specific agreement between father and son with respect to either the payments made by the father in behalf of the son or the crediting of the son's account for services rendered. Under the circumstances and on the evidence presented, we cannot agree with petitioner's claim on this item. Respondent included the amounts paid out for the son in petitioner's income as gifts. While petitioner testified that the only gifts he made were in smaller amounts to his children and grandchildren, we do not understand petitioner's contention to be, and he certainly has not proven, that he did not make the payments in behalf of his son in the amounts claimed. His own testimony supports the fact that he did. Even if these amounts were not included as gifts, they would have to be included as additional living expenses and the tax result would be the same. The only other item in issue in the net worth statement is petitioner's claim that the item "Due clients" should be increased by $1,000 in 1949 for an amount he discovered in 1954 or 1955 he owed a client named Craddock. It was stipulated that petitioner owed clients $10,010.97 at the end of *296 1949 and we cannot tell from the evidence whether the $1,000 owing to Craddock is included in that figure or not. Furthermore, the evidence is too barren of details on this transaction to support a finding that petitioner owed this additional amount at the end of the years 1949, 1950, and 1951. $3,000 Legal and Accounting Fee Paid in 1954 Petitioner claimed and respondent disallowed a deduction of $3,000 for legal and accounting fees incurred by petitioner in defending his criminal tax case in 1954. The defense was unsuccessful. It is well settled that legal fees and expenses incurred in unsuccessfully defending a criminal charge against the taxpayer are not deductible. Thomas A. Joseph, 26 T.C. 562 (1956). Petitioner claims that because of his defense of this charge he was not disbarred from practicing law and that he is entitled to deduct the fee on that basis. He cites no authority to support this theory. We do not believe this fee can be considered an ordinary and necessary expense of petitioner's law practice, Richard F. Smith, supra, and know of no other basis for allowing the deduction. Accordingly, we sustain respondent's disallowance of the *297 deduction. Additions to Tax Petitioners have presented no evidence on the issue of their failure to file timely declarations of estimated tax. The additions to tax under section 294(d)(1)(A), I.R.C. 1939, are approved for the years 1947 through 1951, but the additions to tax determined by respondent to be due under section 294(d)(2), I.R.C. 1939, are disapproved. Commissioner v. Acker, 361 U.S. 87 (1959). Respondent's Computation of Unreported Income In computing petitioner's unreported income and the additional tax due in the deficiency notices, respondent deducted the net income reported by petitioner on his returns from the corrected income determined by respondent's net worth and expenditures statement. The balance, or "increase in income," is then added to "net income per return" to arrive at "net income adjusted" upon which the tax is then computed without allowing any deductions. If the payments of the itemized deductions for contributions, taxes, etc., claimed by petitioner on his returns have been included in the stipulated "living expenses," then we believe respondent has failed to give petitioner credit for the itemized deductions, about which we *298 do not believe there is any dispute, in computing the "unreported income" or the tax. The "living expense" items are stipulated as a total figure with no breakdown as to what was included therein. This is a matter which should be resolved in the Rule 50 computations. Decision will be entered for the petitioner in Docket No. 73189. Decision will be entered under Rule 50 in Docket No. 73190. Decision will be entered for the respondent in Docket No. 74105. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Alfred B. Cenedella and Florence H. Cenedella, Docket No. 73190, and Alfred B. Canedella, Sr., Docket No. 74105.↩
2. The amounts shown as "adjusted gross income - corrected" may be "net income corrected" depending on the answer to the question raised in the last paragraph of this Opinion.↩
b. As determined by respondent - unadjusted. ↩
c. As determined by respondent, adjusted only for cash on hand at 12-31-46.↩
a. See footnote 2. ↩
3. See footnote 2.↩
4. Respondent claims the year 1950 is also open because of the 5-year statute of limitations, section 275(c), I.R.C. 1939↩, and waivers executed within that period, but we need not pass on that issue in view of our finding of fraud for 1950.
5. Discussed more in detail, infra.↩