**Lillian KILPATRICK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Lillian KILPATRICK, Respondent.**

**No. 15501.**

United States Court of Appeals
Fifth Circuit.
Nov. 9, 1955.

William R. Frazier, Hill & Frazier, James P. Hill, Jacksonville, Fla., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty.

Gen., R. P. Hertzog, Acting Chief Counsel, Int. Rev. Service, Rollin H. Transue, Sp. Atty. Int. Rev. Service, Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and CAMERON, Circuit Judges.

BORAH, Circuit Judge.

These petitions for review involve the income tax liability of taxpayer, Lillian Kilpatrick, for the years 1942 and 1943. The Tax Court found deficiencies in income taxes for the years in question of $34,491.76 and $21,130.98, respectively, plus a fifty percent fraud penalty for each of those years.

The findings of fact and conclusions of the Tax Court are reported in 22 T.C. 446. To the extent that they need here be stated, they are summarized as follows: The taxpayer was an experienced business woman. In the year 1914 she began operating a ladies' ready-to-wear and dress shop in Marianna, Florida and in 1931 she moved to Millville, a suburb of Panama City, Florida, where she conducted the same type of business. In 1935 she purchased a store in the business district of Panama City and moved her shop to this more desirable location. In the same year taxpayer employed Clyda and Velma Sutherland to work in the business at a weekly salary of either $12.00 or $15.00, which salary continued until 1936 when the Sutherlands moved into the taxpayer's living quarters above the store, and the three women began sharing expenses. During the years 1936 through 1942, the Sutherlands received no salary but withdrew from the business receipts only their ordinary and necessary living expenses. However, no record was maintained of such withdrawals during those years and no attempt was made to account for same. In the proceedings before the Tax Court, it was stipulated that the taxpayer in 1942 expended a total of $6,404.15 for Clyda and Velma Sutherland on mortgages in connection with the purchase of properties, on life insurance policies, and for shares under contracts with the Investors Syndicate.

On January 1, 1943, taxpayer entered a partnership agreement with Clyda and Velma Sutherland in which the taxpayer retained a fifty percent interest in the business and each of her former employees was designated owner of a twenty-five percent interest therein. This agreement made no reference to the contributions of the respective co-partners, nor does it contain the slightest suggestion that the Sutherlands' interest represented compensation for services previously rendered. During the years 1942 and 1943, taxpayer reported net taxable income of $8,470.36 and $7,542.-16, respectively, whereas the Commissioner determined that the understatement of taxable income was in excess of $92,000 for the years in question.

The Commissioner, in the absence of the records of taxpayer and the partnership which were burned or otherwise destroyed prior to September 10, 1946, determined taxpayer's net income for 1942 on the basis of the increase in her net worth plus nondeductible personal expenditures. It was stipulated that she had an increase in net worth in 1942 of over $54,000, and the 1942 deficiency consists of numerous itemized amounts of unreported income and certain adjusted unallowable deductions. Among these items, only the aforementioned $6,-404.15 of payments made by taxpayer on behalf of the Sutherlands are here in contest. The 1943 deficiency is primarily attributed to taxpayer's understatement of her share of partnership income in the amount of $35,362.33[1]

In brief, taxpayer is here claiming that she should have been allowed a deduction of $6,404.15 in 1942 and a further deduction in 1943 of $45,427.08, the

---

[1]. For the taxable year ended December 31, 1943, the partnership reported net income in the amount of $18,099.28 and taxpayer's share as a partner in the amount of $9,049.64, whereas the net worth determination of total partnership net income for that year was $88,823.94.

stipulated value of one-half the partnership business assigned to the Sutherlands, both of these sums being alleged to have been ordinary, necessary and reasonable expenses incurred in the conduct of her business as compensation for services rendered by employees. These "deductions" were not claimed as such on the income tax returns filed by the taxpayer in 1942 and 1943, and Clyda Sutherland did not report any of the amounts as income received by her. Thus, the problem here is whether the Commissioner should have treated such sums as legitimate deductions in computing taxpayer's income under the net worth plus nondeductible expenditures theory.

In her petition for review a number of questions are raised by the taxpayer, but it is necessary to consider only the contentions that the Tax Court erred: (1) in admitting testimony and judgments, entered upon pleas of nolo contendere, convicting the taxpayer and Clyda Sutherland for income tax evasion in the years 1943 and 1944, and 1945, and in using such evidence for impeachment purposes; (2) in holding that the deficiencies for the years 1942 and 1943 were not overthrown by the taxpayer's proof; and (3) in finding that parts of the deficiencies in 1942 and 1943 were due to fraud with intent to evade tax under Section 293(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b).

■ We think that the Tax Court was correct in holding that the records of prior convictions of taxpayer and of the witness Clyda Sutherland were admissible for impeachment purposes, and in permitting the government's cross-examination with respect to their convictions. By statute the Tax Court is bound by the rules of evidence applicable in the Courts of the District of Columbia,[2] and admission of the evidence in question was specifically authorized by the District of Columbia Code.[3] In its consideration of the testimony and judgments of conviction the Tax Court said:

"We think they are admissible for impeachment purposes as would be any conviction of a crime committed by any witness, and that they may be noted as a part of the background of the present case. We refrain from deciding, for reasons which will presently appear, whether it is permissible to consider petitioner's plea as evidence on the fraud issue * * * we are giving no consideration to petitioner's prior conviction on this [fraud] issue."

It is therefore clear that the Tax Court did not rely on the record of taxpayer's conviction for its finding of fraudulent intent during the taxable years. It follows that the taxpayer's objection to the use of the plea as an admission of the fraud charged is not well-founded. Nor is A. B. Dick Co. v. Marr,[4] upon which taxpayer strongly relies, apposite, because there the evidence of the plea was submitted as "bearing directly upon the merits of the charges" before the Court, and in the teeth of Section 5 of the Clayton Act which expressly prohibits third parties in civil cases using evidence of consent judgments as prima facie evidence on the merits.[5] Furthermore,

**2.** 26 U.S.C. § 1111 (1952 ed.)

**3.** Title 14, § 305, District of Columbia Code provides: "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceeding containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient."

**4.** D.C., 95 F.Supp. 83, appeal dismissed 2 Cir., 197 F.2d 498, certiorari denied 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680.

**5.** Section 5 of the Clayton Act, 15 U.S.C.A. § 16, provides: "A final judgment or decree rendered in any criminal prose-

Judge Medina, in refusing to receive the plea as tendered said: "The fact that the plea was made is noted as part of the background of this proceeding, but the plea has no other probative significance." 95 F.S. 83, 101. Precisely the same usage of such evidence was made by the Tax Court in the present case and we think that the ruling of the Tax Court in respect thereto was correct. Cf. Pfotzer v. Aqua System, 2 Cir., 162 F.2d 779.

■ With reference to the taxpayer's second point, in which she seeks to overthrow the deficiency determinations, we take it to be well settled that the Commissioner's determination is prima facie correct and that the burden is on the taxpayer to prove it wrong. This is particularly true in the case of deductions under the "now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607. The Tax Court after carefully reviewing the record found that the taxpayer did not carry the burden of proving that the amounts in question were intended in 1942 and 1943 as compensation for services. Whether these payments were made with one intention or another was a question of fact and it was for the trier of the facts to seek among competing aims or motives the ones that dominated conduct. We agree with the Tax Court and think a finding in favor of the taxpayer would have had no substantial basis in the evidence. The taxpayer relied almost exclusively upon her own testimony and that of Clyda Sutherland, and their credibility was open to serious question, not only by their proven convictions, but because they admitted concealing certain bonds and out-of-state bank accounts and confessed that they lied under oath to the Commissioner's agents regarding these funds. In addition, and if more need be said, their testimony before the Tax Court was conflicting, misleading and evasive.

■■ With respect to the fraud issue, the Tax Court found that the Commissioner had carried the burden of proof and had established that taxpayer had failed to report specific items of income in each of the years involved. The Tax Court was led to this conclusion by reason of taxpayer's understatement of gross income admitted in these proceedings to have been in amounts in excess of $56,000 and $36,000 for the two years, the unsatisfactorily explained disappearance of taxpayer's records and her deliberate concealment of funds and intentional falsification under oath. Upon the record herein, the finding cannot possibly be characterized as "clearly erroneous." Nor is there any merit to the taxpayer's contention that the Tax Court treated the fraud issues for the two years together, for it found as a fact that a part of the deficiencies for each of the taxable years was due to fraud with intent to evade tax, and the quotation from the Tax Court's opinion, which is set forth in the margin,[6] clearly demonstrates that the evidence was considered as to each year.

cution * * * brought by * * * the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, This section shall not apply to consent judgments or decrees entered before any testimony has been taken. * * *"

6. The Tax Court said: "* * * the two years have numerous additional similarities. The understatement of gross income was as great, and in fact greater, for 1942. The excuse given is as inadequate. Petitioner was an experienced and capable business woman no less in 1942 than in 1943. The unsatisfactory explanation for the disappearance of petitioner's books is as applicable to the one year as to the other * * * Petitioner's testimony and conduct on the stand, and that of her principal witness were equally damaging as to each year."

Having concluded that the Tax Court's decision is correct and should be affirmed on all the issues, there is no need to consider the Commissioner's petition for review, for the Commissioner stated therein that he did not contest the decision of the Tax Court and would abandon his petition if the decision of the Tax Court is affirmed. The Commissioner's petition for review is accordingly dismissed as moot, and the decision of the Tax Court is

Affirmed.

CAMERON, Circuit Judge.

I concur in the result.