Hutchen Upshaw and Ardenia Upshaw v. Commissioner. Hutchen Upshaw v. Commissioner.
Upshaw v. Commissioner
Docket Nos. 94564, 94565.
United States Tax Court
T.C. Memo 1968-123; 1968 Tax Ct. Memo LEXIS 174; 27 T.C.M. (CCH) 593; T.C.M. (RIA) 68123; June 24, 1968, Filed F. Laurence Anderson, Jr., 1706 Broadway, Gary, Ind., and Jack C. Brown for the petitioners. George P. Adinamis, for the respondent. WHITEY Memorandum Findings of Fact and Opinion WITHEY, Judge: *176 Respondent determined income tax deficiencies and additions to the tax in these consolidated cases as follows: Additions
to Tax
I.R.C. 1939
I.R.C. 1954
Year
Deficiency
Sec. 294
Sec. 293(b)
Sec.
Sec.
Sec.
(d)(1)(A)
291(a)
6653(b)
6654(a)
[1] 1953
$ 36,140.16
$3,299.26
$18,070.08
$9,035.04
1958
257,500.41
$128,750.20
[2] 1954
67,031.71
6,382.76
33,515.86
1955
146,803.38
73,401.69
$135.45
1956
179,965.15
89,982.58
1957
232,897.58
116,448.79
The issues presented for determination are: (1) Whether respondent erred in the computation of petitioners' income tax deficiencies by means of the net worth-nondeductible expenditure method because of (a) his failure to reflect petitioners' accrued Federal income taxes for the years 1953 through 1958 as liabilities in the net worth statement, and (b) his addition to annual increases in net worth of nondeductible losses on disposition of personal automobiles incurred by petitioners. (2) Whether *177 petitioners filed false and fraudulent income tax returns for the years 1953 through 1958 with the intent to evade tax, and whether any part of the underpayment of tax in those years was due to fraud so as to justify the imposition of the addition to tax for fraud. (3) Whether petitioners are collaterally estopped from denying the assertion of an addition to tax for fraud for the taxable year 1958. (4) Whether deficiencies in income taxes and additions to the tax for the years 1953 through 1957 are barred by the applicable statute of limitations. (5) Whether additions to tax for failure to file declarations of estimated tax in the years 1953 and 1954 under section 294 (d)(1)(A) of the Internal Revenue Code of 1939, and for failure to file a timely income tax return for the year 1953 under section 291(a) thereof, are applicable. (6) Whether petitioners are liable for an addition to tax for the year 1955 for failure to pay estimated income tax under section 6654(a) of the Internal Revenue Code of 1954. [1]
Findings of Fact All facts which have been stipulated *178 are found and made a part hereof by reference. Petitioners Hutchen Upshaw and Ardenia Upshaw are husband and wife and resided in Gary, Indiana, at the time the petitions in this proceeding were filed. On March 9, 1955, they filed a delinquent joint Federal income tax return for the year 1953 with the district director, Indianapolis, Indiana, 594 and they filed their joint Federal income tax return for the year 1958 with the district director, Chicago, Illinois. Hutchen Upshaw, a cash basis taxpayer, filed individual tax returns for the years 1954, 1955, 1956, and 1957 with the district director, Indianapolis, Indiana. Since Ardenia Upshaw is a party to these proceedings only because she filed joint income tax returns for the years 1953 and 1958, Hutchen Upshaw will hereafter be referred to as the petitioner. Petitioner was born in Pettsview, Alabama, on November 20, 1910. During his formative years he lived with his mother in rural Alabama until the age of nine, when she died. He thereafter lived with his father, his stepmother, and her three daughters in Indiana Harbor, Indiana. Petitioner completed 2 years of high school before terminating his formal education at the age *179 of 16 to work in foundries and at odd jobs, which included shining shoes, running errands, delivering papers and groceries, cleaning pool rooms, and shoveling coal. Petitioner was adjudged a bankrupt in 1940, which bankruptcy was concluded in 1944 with a distribution of all assets of the bankrupt in the amount of $30. Petitioner was active as a policy agent, i.e., a gambler, and at the same time was employed as a welder by the American Steel Foundry Co. of East Chicago, Indiana, until September 1950. Thereafter, for a period of about 15 months, he was exclusively engaged as a policy agent. He began activities as a principal in such gambling activities in November 1951 and continued doing business as The Lucky Strike Policy Wheel throughout the years in issue (1953 through 1958). In August 1953, petitioner purchased a tavern at 1913 Broadway, Gary, Indiana. Since that time the policy activities were operated from the rear of the tavern and from the basement at 1913 Broadway. Petitioner was the only person authorized to sign checks on the tavern bank account. During the taxable years 1953 to 1958, inclusive, the petitioner was engaged in various income-producing activities including *180 policy and lottery operations, bookmaking operations, money lending, rental operations, buying and selling stocks and other securities, and the operation of the tavern. Petitioner's criminal record discloses one conviction during the years 1945 to 1959 on a charge connected with his policy operations and activities. Petitioner and Ardenia Upshaw, hereinafter referred to as Ardenia, have been married for over 19 years. Ardenia graduated from Indiana University in June 1954 with a Bachelor of Science degree in education. She was employed as a teacher by the school system of the City of Gary during the 1954-1955 school year. Subsequently, Ardenia returned to the University of Indiana to pursue a master's degree in education. Petitioner resided with Ardenia at 1913 Broadway, Gary, Indiana, from 1953 to April 1959, when they moved into their new home at 1987 Taft Street, Gary, Indiana. In the years 1953 through 1958 Ardenia had no income except for wages of $1,372.37 in 1954 and $3,120.17 in 1955 received from the City of Gary school system. None of the assets contained in the net worth computations of respondent for the years 1952 to 1958, inclusive, were acquired with moneys earned *181 by Ardenia. Ardenia filed individual income tax returns for the years 1954, 1955, and 1957. She did not file a return for 1956. Petitioner filed Federal income tax returns for the taxable years 1947 through 1952 indicating no tax liability for the years 1947 through 1950 and income tax liability for the years 1951 and 1952 in the amounts of $207 and $405, respectively. Petitioner's adjusted gross income and tax liability as disclosed on the Federal income tax returns filed by him in the years 1953 through 1958 are as follows: Adjusted gross
Tax Year
income
liability
n1 1953
$ 5,000.00
$ 599.40
1954
10,050.00
2,079.00
1955
17,428.60
3,905.80
1956
27,700.00
8,960.00
1957
33,083.99
14,450.07
[1] 1958
74,983.59
33,830.44
On May 3, 1961, jeopardy assessments were made against petitioners for income taxes and additions to tax as follows: Year
Tax
Additions to tax
Interest
n1 1953
$ 36,140.16
$ 30,404.38
$15,466.50
1954
67,031.71
39,898.62
24,329.76
1955
146,803.38
73,511.05
44,475.40
1956
179,965.15
89,982.58
43,724.14
1957
232,897.58
116,448.79
42,610.74
[1] 1958
257,500.39
128,750.20
31,661.96
*182 595 The statutory notices mailed to the petitioners on June 30, 1961, determined deficiencies in income taxes and additions to tax which were the subject of the jeopardy assessments made, as set forth above. The petitioner duly executed Treasury Form 872's as indicated below: Date to which
statute of
Taxable
limitations
year
Date executed
extended
1954
Jan. 23, 1961 [1]
June 30, 1962
1955
Dec. 17, 1958 [2]
June 30, 1960
1955
Apr. 1, 1960
June 30, 1961
1955
Jan. 23, 1961
June 30, 1962
1956
Apr. 1, 1960 [2]
June 30, 1961
1956
Jan. 23, 1961
June30, 1962
1957
Jan. 23, 1961 [2]
June 30, 1962
During the years involved herein, petitioner failed to maintain adequate books and records of his income. One of the reasons why petitioner failed to keep adequate books and records of his gambling activities was to prevent their use as evidence against him if seized by state authorities. A customary aspect of petitioner's policy business *183 was to deal in cash. The deficiencies determined by respondent are based upon increases in petitioner's net worth with adjustment for personal living expenses and other nondeductible amounts expended and for certain nontaxable items. The parties have agreed that, subject to two objections of petitioner discussed in the opinion herein, the figures and entries set forth in the net worth statement and computation of adjusted gross income are correct and that the petitioner's understatements of adjusted gross income for the years involved are as follows: Amount of under-
Year
statement
n1 1953
$ 19,613.13
1954
37,964.31
1955
99,691.94
1956
111,702.15
1957
159,915.18
[1] 1958
173,184.59
Petitioners during the years 1953 to 1958, inclusive, did not receive nontaxable income such as gifts and inheritances or other nontaxable receipts, except for the nontaxable portion of capital gains in 1957 and 1958 and nontaxable insurance dividends in 1957 and 1958, as set forth in respondent's computation of adjusted gross income. Upon the request of internal revenue agents, petitioner attended an interview on December 1, 1958, to discuss his *184 tax returns for the years 1953 through 1957. At that conference, petitioner responded to all the questions the agents propounded. During the interview, petitioner was asked to identify any real estate he held. In response, he identified property owned by him located at 1700 Massachusetts, 1913 Broadway, 2473 Buchanan Street, and 1524 Virginia Street, all in Gary, Indiana. The revenue agent then named two more parcels of realty which he had reason to believe petitioner owned whereupon petitioner acknowledged ownership thereof. When petitioner was asked what real estate holdings he had outside of Lake County, Indiana, he stated that he owned a piece of property in Cleveland, Ohio, and that he owned no other. At the same interview, petitioner was asked what the cost of remodeling the property located at 1700 Massachusetts Street, Gary, Indiana, was to date. Petitioner stated that he thought it ran between $12,000 and $15,000. When petitioner was asked to identify the automobiles owned by him he stated that he owned a 1958 Mercury station wagon and no other automobiles. As of December 31, 1958, petitioner owned no less than 16 separate parcels of real estate, one of which *185 was located in Idlewild, Michigan. The property located at 1700 Massachusetts Street, Gary, Indiana, was purchased by petitioner in June 1956 for $36,500. From June 1956 through December 31, 1958, amounts totaling $124,935.45 were expended by petitioner on capital improvements for this building. During the year 1958, petitioner owned a 1958, 4-door Lincoln Continental automobile. The following assets were acquired by petitioner in the names of other persons during the years 1954 through 1956: Asset
Year acquired
Value
Acquired in the
name of
Realty located at 3921
1955
$3,465.00
Ardenia Williams
McCook, East Chicago,
(Ardenia Upshaw's
Indiana
maiden name)
1956 Lincoln Premier
1955
6,054.75
Iona Floyd
(petitioner's
mother-in-law)
1957 Lincoln Premier
1956
6,807.00
Robert Harper
(employee of
petitioner)
1957 Chrysler Imperial
1956
6,300.00
Robert Upshaw
(petitioner's
younger brother)
International Harvester dump
1954
7,373.51
Ardenia Williams
truck
On May 12, 1961, the Federal grand jury at Hammond, Indiana, returned an indictment in Criminal Action No. 3206, United States *186 of America v. Hutchen Upshaw, petitioner herein, which charged in four separate counts that Hutchen Upshaw did willfully and knowingly attmmpt to evade and defeat a large part of the income taxes due and owing by him for the years 1955, 1956, and 1957 and by him and his wife for the year 1958 to the United States of America by preparing and causing to be prepared and signing false and fraudulent income tax returns in violation of section 7201 of the Internal Revenue Code of 1954. The United States District Court for the Northern District of Indiana, Hammond Division, on October 6, 1961, upon petitioner's plea of guilty, entered its judgment of conviction against petitioner on Count IV of the above indictment relating to the year 1958. Petitioner was sentenced to 5 years imprisonment and a $10,000 fine. Ultimate Findings of Fact Respondent did not err in his net worthnondeductible expenditures computation of petitioner's understatements of adjusted gross income for the years 1953 to 1958, inclusive. In each of the years in issue herein, petitioner has filed a false and fraudulent income tax return with intent to evade tax. At least a part of the deficiency *187 for the year 1953 and of the underpayments of tax for the years 1954 through 1958 were due to the fraud of the petitioner with intent to evade tax. Opinion Deficiencies Petitioner stipulates to the correctness of the items contained in respondent's net worth computation of the deficiencies herein subject to one objection thereto and to respondent's computation of adjusted gross income subject to an objection to one item thereof. Petitioner's first contention is that the respondent's determination of petitioner's income tax deficiencies under the net worthnondeductible expenditures method of reconstructing taxable income is erroneous because respondent arbitrarily excluded petitioner's accrued income tax liabilities from the schedule of liabilities in the net worth computation. Petitioner argues that the fact that Federal income taxes are not deductible in computing "taxable income" does not mean that they are not liabilities properly to be included in the net worth computation, and that respondent's failure to do so include these accrued taxes in the computation "creates a fallacious and false determination of adjusted gross income." Even assuming petitioner's premise that *188 a cash basis taxpayer may utilize an accrual method net worth computation (i.e., accrued taxes as a liability in the net worth statement), petitioner's contention therefrom is without merit. What petitioner fails to realize is that if, as he argues, accrued Federal taxes are to be subtracted as a liability in computing the increase in net worth for a particular year, they then become a nondeductible accrued item which must be added back as an adjustment to the increase in net worth for that year. [2] Thus, petitioner's accrued tax liability is, in effect a "wash" item in the net worth computation. An argument similar to petitioner's was made by the taxpayer in the case of Romm v. Commissioner, 255 F. 2d 698 (C.A. 4, 1958), affirming an unreported Tax Court Order, and was rejected by the Court as follows: Here credit is sought for Romm's own federal taxes and penalties, as a deduction from his annual increase *189 in net worth. Whether income is ascertained by the net worth method of computation or otherwise, it is a fundamental in our tax laws that a taxpayer may not deduct from his annual taxable income the amount of his federal tax or penlties; the Internal Revenue Code will not permit it. * * * Therefore, we hold respondent did not err in failing to reflect petitioner's unpaid Federal incomes taxes as liabilities in computing petitioner's income tax deficiencies by means of the net worth-nondeductible expenditure 597 method. Cf. Schultz v. Commissioner, 278 F. 2d 927, 931 (C.A. 5, 1960). Petitioner's second contention is that the nondeductible losses on disposition of personal automobiles should not be added to annual increases in net worth in computing corrected adjusted gross income. He argues that such additions are duplications of the sums already included in the acquisition costs of replacement vehicles. Petitioner's argument evidences a lack of understanding of respondent's calculations in regard to the automobiles. Respondent's calculations have two aspects. [3] First, the car is treated as an asset with a tax basis consisting of the cash paid plus the cash trade-in *190 allowance for the old car. Second, the loss on the old car, computed as the difference between its adjusted tax basis and the cash trade-in allowance, is then added back to net worth increase as a nondeductible personal expenditure. This unrecovered costs basis in the old automobile is not reflected in the net worth increase as part of the acquisition cost. Only the recovered cost basis of the old auto, i.e., its trade-in allowance is included in the acquistion cost. [4]
If the unrecovered cost basis were not added to the increase in net worth for the year involved, the petitioner would, in effect, have a loss deduction *191 for the unrecovered portion of the initial cost basis, which loss is personal in nature and thus not an allowable deduction for tax purposes. Therefore, we hold that the respondent did not err in adding the nondeductible losses on disposition of personal automobiles to the net worth increases in computing corrected adjusted gross income. Additions to Tax The next issue is whether the petitioner is guilty of fraud with intent to evade tax and therefore subject to additions to tax under section 293(b), I.R.C. 1939[5] and section 6653(b), I.R.C. 1954. [6] Respondent bears the burden of proving fraud, which proof must be by "clear and convincing evidence"; M. Rea Gano, 19 B.T.A. 518 (1930); Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959). *192 It is well established that continued understatement of large amounts of taxable income is evidence of fraudulent intent to evade taxes. Richard F. Smith, 31 T.C. 1 (1958); Luerana Pigman, 31 T.C. 356 (1958); Lillian Kilpatrick, 22 T.C. 446 (1954), aff'd. 227 F. 2d 240 (C.A. 5, 1955); Rogers v. Commissioner, 111 F. 2d 987 (C.A. 6, 1940). In the present case, petitioner has virtually conceded understatements of income totaling approximately $600,000 over a 6-year period, in amounts ranging from $20,000 to $175,000 in a single year. The omissions are of such magnitude and occurred so systematically over the years involved herein as to preclude any inference on our part that they were omitted due to oversight. Cf. Estate of Joseph Nitto, 13 T.C. 858 (1949). However, we do not rest our determination that petitioner acted fraudulently solely on the factor of omission of substantial amounts of income. Other indicia of fraud which we have found to be present are the following: failure to keep adequate books and records, Bryan v. Commissioner, 209 F. 2d 822 (C.A. 5, 1954), affirming a Memorandum *193 Opinion of this Court; Leon Papineau, 28 T.C. 54 (1957); material misstatements to a revenue agent, Nathan Bilsky, 31 T.C. 35 (1958); Lillian Kilpatrick, supra; and the concealment of the ownership of certain property of petitioner by holding it in the names of others, Furnish v. Commissioner, 262 F. 2d 727 (C.A. 9, 1958). In the face of this clear and convincing showing of fraud by the respondent, petitioner's only explanation is that he is a man 598 of limited education and ability with no knowledge of accounting procedures. But as this Court stated in the case of Eugene Vassallo, 23 T.C. 656 (1955): An attempt was made to demonstrate petitioner's abysmal ignorance of accouting and bookkeeping methods. It was alleged that he could not read or do other than write his own name and Arabic numerals. Be that as it may, he has been a resident of the United States since 1910 and from the record here it would seem that he has been a successful businessman during the years here in issue. Any man intelligent enough to earn that amount of income must be presumed to be intelligent enough to make an honest effort to report *194 it correctly and pay the tax thereon. Sometimes there are unusual circumstances which excuse a taxpayer's failure to meet the common standards required of all. In this record we find no such circumstances. Rather, we find a blatant disregard for the minimum responsibility required of every taxpayer and a willfully fraudulent and continuing effort to defeat and evade the payment of taxes due by him and by his corporation. Cf. Webb v. Commissioner, 394 F. 2d 366 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court. Similarly, in this case, we find in petitioner's conduct a "blatant disregard for the minimum responsibility required of every taxpayer," and we are of the opinion that a false and fraudulent return with intent to evade tax was filed for each year, and that at least a part of the underpayment of tax in each of the years in issue herein was due to fraud of the petitioner. Respondent also argues that both petitioner and his wife are collaterally estopped to deny the assertion of the addition to tax for fraud for the year 1958, wherein they filed a joint return, due to petitioner's conviction for criminal fraud for that year. [7] However, our holding *195 in favor of the respondent on the fraud issue on the merits renders a decision on this contention unnecessary. As regards petitioner's argument that the deficiencies in tax and additions to tax for the years 1953 through 1957 are barred by the statute of limitations, our determination in favor of the respondent on the issue of fraud also resolves this question, sec. 6501 (c)(1), I.R.C. 1954, [8] formerly sec. 276(a), I.R.C. 1939. *196 The remaining issues for decision are whether petitioner is subject to additions to tax for his failure to file a timely income tax return for the year 1953, [9] for his failure to file a declaration of estimated tax for the years 1953 and 1954, [10] and for his failure to pay estimated income tax for the year 1955. [11] 599 The petitioner on brief made no argument with regard to the issues nor has he produced any evidence with respect thereto. Therefore we find that petitioner has abandoned those issues and we decide them for the respondent. *197 Decisions will be entered under Rule 50. Footnotes
1. Docket No. 94564, joint return of Hutchen and Ardenia Upshaw. ↩
2. Docket No. 94565, individual return of Hutchen Upshaw.↩
1. All references are to the Internal Revenue Code of 1954, unless stated otherwise.↩
1. Joint return.↩
1. Joint return.↩
1. Date prior to the expiration of the 6-year statute of limitations of section 6501(e). Under both the 1939 and 1954 Internal Revenue Codes, Federal income taxes are a nondeductible expense. Sec. 23(c)(1)(A), I.R.C. 1939; sec. 164(b)(1), I.R.C. 1954, for taxable years ending before December 31, 1963; now section 275.
[2] Date prior to the expiration of the 3-year statute of limitations of section 6501(a)↩
1. Joint return.↩
3. See Schmidt, Legal and Accounting Handbook of Federal Tax Fraud, Prentice-Hall, Inc. (1963), p. 324. ↩
4. To illustrate, if a taxpayer with a personal automobile that cost $2,000, trades it in on a new car with a purchase price of $3,000 and is allowed $500 for the old auto, the nondeductible loss is $1,500 ($2,000 purchase price minus $500 trade-in allowance), and the basis of the new auto is $3,000 ($2,500 cash paid plus $500 trade-in allowance). The $1,500 unrecovered cost basis on the old auto is not reflected in the $3,000 acquisition cost of the new auto.↩
5. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. (b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2). ↩
6. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩
7. Petitioners raise no issue with respect to the joint liability of the wife with respect to additions to tax for fraud based solely on the fraudulent conduct of the husband where a joint income tax return was filed. Louise M. Scudder, 48 T.C. 36 (1967); W.L. Kann, 18 T.C. 1032 (1952), affd. 210 F. 2d 247↩ (C.A. 3, 1953).
8. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions. - (1) False Return. - In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment at any time. * * * Furthermore, it appears from the facts that Treasury Form 872's were timely executed thereby extending the statutes of limitations for the years 1954 through 1957 until June 30, 1962, well after the time the respondent sent his notices of deficiency.↩
9. I.R.C. 1939. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 percentum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * * ↩
10. I.R.C. 1939. SEC. 294. ADDITIONS TO THE TAX IN CASE OF NONPAYMENT. (d) Estimated Tax. - (1) Failure to File Declaration or Pay Installment of Estimated Tax. - (A) Failure to File Declaration. - In the case of a failure to make and file a declaration of estimated tax within the time prescribed, unless such failure is shown to the satisfaction of the Commissioner to be due to reasonable cause and not to willful neglect, there shall be added to the tax 5 percentum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 percentum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 percentum of the unpaid portion of such installment. * * * ↩
11. I.R.C. 1954. SEC. 6654. FAILURE BY INDIVIDUAL TO PAY ESTIMATED INCOME TAX. (a) Addition to the Tax. - In the case of any underpayment of estimated tax by an individual, except as provided in subsection (d), there shall be added to the tax under chapter 1 for the taxable year an amount determined at the rate of 6 percent per annum upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).↩