HAROLD NACHISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nachison v. Commissioner
Docket No. 14251-78.
United States Tax Court
T.C. Memo 1981-113; 1981 Tax Ct. Memo LEXIS 632; 41 T.C.M. (CCH) 1079; T.C.M. (RIA) 81113; March 10, 1981. *632 Held, part of the underpayment of petitioner's taxes for each of the years at issue was due to fraud with intent to evade tax under section 6653(b), I.R.C. 1954. Kevin C. Reilly, for the respondent. WILES
*633 MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and additions to tax in petitioner's Federal income taxes: Addition to Tax
Addition to Tax
Year
Deficiency
Section 6653(b) [1]
Section 6654(a)
1969
$ 9,153.40
$ 4,576.70
$ 173.78
1970
7,296.03
3,648.01
228.16
1971
6,096.00
3,048.00
195.07
1972
6,224.00
3,112.00
1973
18,082.00
9,041,00
295.80
Petitioner timely filed a petition with this Court on December 27, 1978. On March 2, 1979, respondent timely filed an answer wherein, inter alia, he made affirmative allegations of fact in support of the determined additions to tax under section 6653(b). Petitioner did not file a reply to that answer, and on May 8, 1979, respondent filed a motion under Rule 37(c), Tax Court Rules of Practice and Procedure, [2] for an order that the undenied allegations set forth in paragraphs 6 and 7 of the answer be deemed admitted. On May 14, 1979, the Court served upon petitioner a copy of respondent's motion together with a notice with respect thereto in which *634 petitioner was informed that if he filed a proper reply as required by Rules 37(a) and (b) on or before May 29, 1979, respondent's motion would be denied, but if a reply was not filed by that date, the Court would act upon the motion at its own discretion at a hearing scheduled for June 13, 1979. Petitioner did not file a reply to the notice nor did he appear at the hearing. By order dated June 13, 1979, the Court ordered petitioner to show cause at a hearing scheduled for June 27, 1979, as to why respondent's motion should not be granted. No appearance was made by or on behalf of petitioner at this hearing. On June 27, 1979, the Court granted respondent's motion under Rule 37 and ordered that the undenied allegations contained in paragraphs 6 and 7 of the answer, excluding conclusory allegations of fraud, be deemed admitted. Pursuant to Rule 70(a), respondent scheduled a discovery conference with petitioner for November 15, 1979, to cover matters not decided by the Court's order of June 27, 1979. At petitioner's request, the conference was rescheduled for December 10, 1979. Petitioner did not attend this conference. Pursuant to Rule 91, stipulation of facts conferences *635 covering areas not determined in the Court's order dated June 27, 1979, were scheduled for January 17, 1980, and rescheduled by request of petitioner for January 29, 1980, and then for February 5, 1980. Petitioner did not appear at any of these conferences. By letter dated February 8, 1980, respondent notified petitioner that if he did not appear at a stipulation of facts conference scheduled for February 21, 1980, and did not appear at calendar call on March 10, 1980, respondent would move the Court to dismiss for lack of prosecution. On February 20, 1980, respondent spoke with petitioner by telephone and was advised by petitioner that he would attend the conference scheduled for the following day. Petitioner failed to attend that conference. When this case was called from the calendar at New York, New York, on March 10, 1980, and again when the case was called for trial, there was no appearance by or on behalf of petitioner. Respondent thereupon moved pursuant to Rule 123(b) that the case be dismissed for lack of prosecution and that the Court sustain the deficiencies and additions to tax under section 6654(a) as set forth in the notice of deficiency. By order dated March 10, 1980, the *636 Court granted respondent's motion. Accordingly, the only issue remaining for decision is whether any part of petitioner's underpayment of tax for the years in issue was due to fraud with intent to evade tax. FINDINGS OF FACT Most of the facts have been deemed admitted under Rule 37(c) and are found accordingly. Harold Nachison (hereinafter petitioner) resided in Staten Island, New York, when he filed his petition in this case. Petitioner was born in Albany, New York, on February 9, 1913. He attended New York State Teachers' College for approximately 18 months and graduated from City College, New York, New York, with a Bachelor of Laws (LL.B.) degree in 1936. Petitioner was admitted to the bar of the State of New York in 1940. From 1937 to 1958, petitioner was employed as a fireman for the City of New York. During each of the years at issue, he received $ 2,940.48 as taxable pension income from the New York City Fire Department. From 1958 through 1973, petitioner was a self-employed attorney specializing in real estate, construction and probate law which required an extensive knowledge of tax law. Petitioner also had real estate investments during this period and *637 received income from that source. During 1969 and 1970, petitioner was a partner in the law partnership of Robinson, Nachison and Nachison, located in Staten Island, New York. During those years, he received $ 22,839 and $ 19,606, respectively, as his distributive share of partnership income and salary from that firm. During 1971, petitioner was a member of the law partnership of Nachison and Nachison. During that year, he received partnership distributions and salary from the firm in the respective amounts of $ 18,738 and $ 13,000. During 1972 and 1973, petitioner was a member of the professional corporation Nachison and Nachison, P.C., and received a salary of $ 26,937 and $ 33,575, respectively. Nachison and Nachison, P.C., was incorporated on January 3, 1972, in the State of New York. From 1969 through 1973, petitioner was a 50 percent shareholder in Aurelian Enterprises, a corporation engaged in the business of real estate investment. In 1969 and 1970, petitioner received income from Aurelian Enterprises of $ 130.30 and $ 307.89, respectively. Petitioner had losses from this corporation in 1971, 1972, and 1973 in the respective amounts of $ 65o.25, $ 144.50 and *638 $ 824.54. During 1970, petitioner received $ 1,249.33 and $ 437.50 as long-term capital gain and mortgage interest income, respectively, from the sale of real property to Vineil Construction Company. Petitioner realized capital gain income on this sale of $ 624.66. During the years at issue, petitioner received interest income from savings accounts in his name at West Side Federal Savings Bank and Community National Bank as follows: Year
Amount
1969
$ 255.50
1970
163.96
1971
587.55
1972
196.73
1973
51.02
During 1972 and 1973, petitioner received mortgage interest income from various individuals and corporations in the respective amounts of $ 2,227.50 and $ 13,657.52. During 1973, petitioner received $ 5,000 from Hamptman & Hamptman as a bankruptcy referral fee. Petitioner failed to file both Federal and New York State personal income tax returns for each of the years 1969 through 1973. Previously, he had filed delinquent Federal income tax returns for the years 1959 through 1963. No tax payments, however, had accompanied any of those returns. On June 17, 1969, petitioner filed a declaration of estimated tax for 1969 in which he estimated *639 his Federal income tax liability to be $ 7,000. A payment of $ 2,351.50 accompanied this declaration. For the years 1969 through 1973, petitioner caused partnership returns of income (Form 1065) and corporate income tax returns (Form 1120) for his law practice to be prepared by an accounting firm. The information shown on those returns was available to petitioner for preparing his personal income tax returns for those years. The partnership and corporate returns for 1970 through 1973 were signed by petitioner and filed with respondent. Acting on an anonymous tip indicating petitioner had bragged that he did not file returns and was beating the government on his taxes, Special Agent David Rundlett (hereinafter Rundlett) of the Criminal Investigation Division of the Internal Revenue Service wrote a letter to petitioner in March 1974, stating that the Internal Revenue Service had no record of income tax returns being filed by him for 1971 and 1972. Petitioner did not respond to this letter. In April 1974, Rundlett was formally assigned to investigage petitioner's tax liabilities for 1970, 1971, and 1972. The years 1969 and 1973 were later added to that investigation. On *640 July 17, 1974, Rundlett interviewed petitioner at his law office and asked him whether he had filed returns for 1969 through 1973. Petitioner replied that he had personally prepared and filed those returns at the Andover Service Center and owed taxes of approximately $ 2,000 for each of the years in question. Although petitioner stated that he had retained copies of the returns at his home, he refused Rundlett's request to see them and verify their filing. He further stated that he would make those copies available to respondent at some later date. Petitioner never furnished copies of those returns to respondent. On July 22, 1974, Rundlett again met with petitioner at his Staten Island office. At that meeting, petitioner admitted that he had earned substantial amounts of money prior to 1972, but arrogantly stated that it did not make any difference because the statute of limitations barred collection of any deficiencies for those years. In August 1974, a power of attorney for Ira L. Tilzer, Esquire, to represent petitioner before the Internal Revenue Service was given to Rundlett. On October 23, 1974, Rundlett personally met with Tilzer and requested all financial records *641 which would be necessary to prepare petitioner's tax returns for 1969 through 1973 or to verify his income and expenses. Acting on petitioner's directions, Tilzer furnished Rundlett with corporate records of Nachison & Nachison, P.C., but refused to supply any records relating to petitioner's law partnership or his personal finances. When asked if he would voluntarily provide his bank records for Rundlett's examination, petitioner, through his attorney, responded in the negative and stated that those records would have to be obtained by serving summonses on the banks. On March 2, 1976, a 3-count criminal information was filed in the United States District Court for the Southern District of New York charging petitioner with willful failure to file Federal income tax returns for 1969, 1970, and 1971, in violation of section 7203. Petitioner initially refused to plead to the information and, on July 17, 1976, a plea of not guilty was entered on his behalf. On July 27, 1976, petitioner pleaded guilty to count 3 of the information involving violation of section 7203 for 1971. On that same date, the United States District Court entered its judgment pursuant to such plea. United *642 States v. Harold Nachison, United States District Court for the Southern Judicial District of New York, Docket No. 76 Cr. 290. The judgment entered in this case is final. Petitioner herein is the same person who was the defendant in the abovecited case, and the respondent herein is a party in privity with the United States of America, the prosecuting party in that criminal case. Using the specific items method of proof, respondent determined petitioner's correct taxable income for the years 1969 through 1973 to be $ 23,604.68, $ 21,089.71, $ 18,756.78, $ 20,320.21, and $ 42,435.49, respectively. These amounts were sufficient to require the filing of returns for those years. OPINION We must decide whether any part of petitioner's underpayment of tax for the years in issue was due to fraud with intent to evade tax under section 6653(b). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Respondent has the burden of proving fraud and he must establish it for each taxable year involved by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court *643 Rules of Practice and Procedure; Cefalu v. Commissioner, 276 F. 2d 122 (5th Cir. 1960). To establish fraud, respondent must show that the taxpayer acted with the specific intent to evade a tax believed to be owing. Mitchell v. Commissioner, 118 F. 2d 308, 310 (5th Cir. 1941). Since direct evidence of fraudulent intent is seldom available, respondent may meet his burden of proof with circumstantial evidence. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Such evidence includes conduct calculated to mislead or conceal. Spies v. United States, 317 U.S. 492, 499 (1943); Gajewski v. Commissioner, 67 T.C. 181, 200 (1976). In the instant case, respondent seeks to meet his burden of proof by relying primarily on facts deemed admitted under Rule 37(c). Although the failure of petitioner to properly prosecute the case does not necessarily relieve respondent of his burden of proving fraud, Gordon v. Commissioner, 73 T.C. 736, 742 (1980); Miller-Pocahontas Coal Co. v. Commissioner, 21 BTA 1360 (1931), we have frequently held that respondent may carry that burden with *644 evidence deemed admitted pursuant to Rule 37(c). See e.g., Gilday v. Commissioner, 62 T.C. 260 (1974); Morris v. Commissioner, 30 T.C. 928 (1958). On the basis of the facts deemed admitted and those established at trial, we hold that respondent has proved fraud for each of the years in issue. It is well established that evidence of fraud can be found from the willful failure to file returns. Powell v. Granquist, 252 F. 2d 56 (9th Cir. 1958); Acker v. Commissioner, 26 T.C. 107 (1956). While willful failure to file does not conclusively prove fraud, Beaver v. Commissioner, 55 T.C. 85, 93 (1970), such failure is properly considered together with other facts in order to establish the requisite intent to evade tax. Cirillo v. Commissioner, 314 F. 2d 478 (3d Cir. 1963), affg. in part a Memorandum Opinion of this Court. In this case, we have no hesitation in concluding that petitioner willfully failed to file Federal income tax returns for each of the years 1969 through 1973. Initially, we note that petitioner pleaded guilty to violating section 7203 [3] for the year 1971. One of *645 the essential elements of this offense is a finding that the failure to file was willful. Hence, the doctrine of collateral estoppel necessarily binds us to a similar finding for that year. See Gemma v. Commissioner, 46 T.C. 821, 834 (1966). As for the other years, the record also supports a finding of willful failure to file. Petitioner is a highly educated person, having graduated from law school in 1936. From 1958 through 1973, he was engaged in the practice of law specializing in matters which required an extensive knowledge of tax law. Furthermore, he had filed returns for the years 1959 through 1963 and had also filed an estimated tax declaration for 1969. By virtue of his professional experience and past filing history, petitioner was obviously aware of his obligation to file returns and pay the tax due. Moreover, considering petitioner's substantial income during the years at issue, we are convinced that his failure to file was not merely inadvertent or negligent. In this connection, we note that petitioner did not appear at trial and thus he offered no explanation for his repeated failures to file returns. Under these circumstances, we conclude that *646 petitioner's willful failure to file constitutes persuasive evidence of fraudulent intent. In addition, petitioner's conduct throughout the audit and pre-trial stages is further evidence of fraud. During his initial meeting with Special Agent Rundlett, petitioner falsely stated that he had filed returns for 1969 through 1973 and maintained copies thereof at his home. Such statements were clearly designed to mislead respondent's agent *647 and to conceal income and strongly evidence an intent to evade tax. United States v. Newman, 468 F. 2d 791, 794 (5th Cir. 1972), cert. denied 411 U.S. 905 (1973); Estate of Upshaw v. Commissioner, 416 F. 2d 737, 741 (7th Cir. 1969); Kilpatrick v. Commissioner, 22 T.C. 446, 448 (1954), affd. 227 F. 2d 240 (kth Cir. 1955). Moreover, petitioner displayed an arrogant demeanor towards Rundlett at their second meeting on July 22, 1974. As Rundlett testified at trial, petitioner acted as if he had outsmarted the government when he freely admitted to having earned significant income in years prior to 1972 believing that those years were then closed from examination. In our view, such behavior indicates that petitioner was fully aware of his previous failures to file and, therefore, is a factor to be considered when determining the existence of fraud. The record herein is replete with evidence showing petitioner's lack of cooperation with respondent. Acting through his attorney, petitioner consistently refused to furnish Rundlett with adequate books and records for the years in issue. He also refused to provide *648 relevant bank records for the apparent purpose of delaying and frustrating respondent's investigation of his tax liability. This failure to supply requested records to respondent's agents is an additional indicia of fraud. Milliken v. Commissioner, 298 F. 2d 830, 836 (4th Cir. 1962), affirming a Memorandum Opinion of this Court; Baumgardner v. Commissioner, 251 F. 2d 311, 323 (9th Cir. 1957), affirming a Memorandum Opinion of this Court. Moreover, petitioner's dilatory conduct continued even after this case was commenced. He repeatedly rescheduled discovery and stipulation conferences with respondent and then failed to appear at any of those conferences. Although he assured respondent on February 20, 1980, that he would attend a conference scheduled for the following day, he also failed to attend this meeting. Such flagrant lack of cooperation by petitioner is strong evidence of fraudulent intent. See Powell v. Granquist, supra at 61. In sum, we conclude that respondent has shown by clear and convincing evidence that part of petitioner's underpayment of tax for each of the years in issue was due to fraud. Accordingly, *649 petitioner is liable for the additions to tax imposed by section 6653(b). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. All references to rules are to the Tax Court Rules of Practice and Procedure.↩
3. Sec. 7203. WILLFUL FAILURE TO FILE RETURN, SUPPLY INFORMATION OR RAY TAX. Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $ 10,000 or imprisoned not more than 1 year, or both, together with the costs of prosectuion.↩